Pearson, Admr., *v*. Arkansas Midland Railroad Company

and St. Louis, Iron Mountain & Southern

Railway Company.

Opinion delivered February 3, 1913.

1. Master and servant—railroads—railway hospital.—When a railroad company conducts a hospital for the benefit of its employees and maintains the same only out of funds collected from the wages

and salaries of its employees, evidence that the railroad had in its possession a surplus fund, which it used only in maintaining and equipping the hospital; that the railway paid for treatment of injured passengers taken to the hospital; and that no part of the fund was used for gain or benefit of the railroad company, is insufficient to support an allegation "that the hospital department of defendant is conducted for gain and profit." (Page 448.)

2. MASTER AND SERVANT—RAILWAY HOSPITAL.—Where, in an action for damages for negligence of physicians in treating the deceased, it is held on a former appeal, that the railway company, which maintains a hospital for the benefit of its employees, out of funds collected from the employees, is not liable therefor, a peremptory instruction to find for the defendant is proper, when the evidence does not show that the hospital department was conducted for gain and profit. (Page 449.)

3. MASTER AND SERVANT—RAILWAY HOSPITAL.—A railroad will not be held to be conducting a hospital for gain or profit, because of the incidental benefit to it of having its employees cared for and avoiding damage suits. (Page 448.)

Appeal from Phillips Circuit Court; *H. N. Hutton,* Judge; affirmed.

*Fink & Dinning,* for appellant.

1. If the defendants were operating the hospital department for gain and profit, they can not escape liability on the ground that such acts were not within the scope of the powers granted under the articles of incorporation, and, therefore, *ultra vires* and void. 91 Ark. 367.

2. Under the proof there can be no doubt that contractual relations existed between appellees and their employees, and that this contract required appellees to use reasonable care to give the employees proper attention. 120 Pac. 1; 37 L. R. A. (N. S.), 760; 65 Fed. 305; 9 C. C. A. 14; 124 S. W. (Tex.), 202, 205.

3. If appellees actually derived a profit from the operation of the hospital department, it follows that gain was the motive for the operation of this department of their business, and they would be liable for the negligent acts of their surgeons and employees. 98 Ark. 412; 9 C. C. A. 14, 17; 30 Wash. 349; 70 Pac. 972, 94 Am. St.

Rep. 880; 20 Tex. Civ. App. 642, 50 S. W. 173; 132 S. W. (Tex.), 113, 115.

*E. B. Kinsworthy* and *S. D. Campbell*, for appellees.

1. It was not within the scope of the charter powers of appellees to operate a hospital for gain and profit. Moreover, the proof affirmatively shows that the hospital department was not run for gain and profit to the appellees. See opinion on former appeal, 98 Ark. 411.

2. Appellees did not contract and agree to provide proper medical and surgical attention in case of injury, and any such alleged contract would not make the appellees liable in damages for death or injury of an employee. 98 Ark. 412.

McCULLOCH, C. J. This is an action instituted by W. E. Pearson, as administrator of the estate of J. M. Campbell, deceased, against the two railroad companies named in the caption, to recover damages alleged to have been caused by negligence on the part of the defendants in failing to give proper medical attention to deceased after injuries received by the latter while working in the service of defendants. He was a freight conductor, and fell or jumped off the top of a freight-car, causing a severe fracture and dislocation of his ankles. He received medical attention by the companies' surgeons, and was taken to the hospital in St. Louis, where he died.

The gist of this action is, as stated by counsel for defendants in their brief, "that the deceased paid monthly dues to the defendant companies for medical and surgical attention, that they owed him the duty to use reasonable care to provide him with the ordinary treatment in attending his injuries, and that this duty was negligently and insufficiently discharged."

The case was formerly here on appeal of the defendants, where the judgment was reversed on account of errors of the court in giving instructions. 98 Ark. 399.

The facts of the case as regards the injury to decedent and the cause of his death, etc., are fully set forth in the statement of facts which accompanied the former

opinion, and need not be repeated. In the opinion the court said this:

"There was no allegation that such hospital department was conducted for gain or profit to the company, and no proof showing that any such gain or profit resulted to it because of such deductions from the wages of its employees, over and above the maintenance and support of said hospital department, and the company denied any understanding or agreement on its part to furnish proper medical attention for the deductions made."

Whatever was said in the opinion necessary to a decision of the questions then before us has become the law of the case, and must, of course, be strictly adhered to. The law applicable to the case was announced by the court in the opinion as follows:

"The railroad company assumed gratuitously to collect and preserve such funds and provide hospital accommodations and competent physicians and surgeons to operate it, without any profit or gain or hope thereof therefrom, should not be required to pay damages for such negligence or malpractice, it being no part of its business under its charter to maintain a hospital. At most, it can only be considered a trustee for the proper administration and expenditure of such fund, and should be held only to ordinary care in the selection of competent and skillful physicians and surgeons to administer relief and provide attention to sick and injured employees."

The law of the case as there announced was, in substance, that there could be no liability of the railway company on account of negligence of the physicians and surgeons serving in the hospital unless there was a contract on the part of the company to furnish service for a consideration or unless the hospital department was conducted by the company for gain or profit.

After the case was remanded plaintiff was permitted, over the objection of defendants, to amend his complaint by inserting therein an allegation "that the hospital department of defendant is conducted for gain and profit."

After all the testimony was adduced, the court gave a peremptory instruction in favor of defendants, and the plaintiff appealed.

Therefore, the only question we have before us is, whether or not the evidence was sufficient to warrant a submission of the case to the jury upon the principles of law announced by this court on the former appeal.

It will be observed that the complaint as amended contained no allegation that there was a contract between the railroad companies and their employees to furnish medical services, the only allegation being that the hospital department was conducted for gain and profit. Nor do we think that there is any evidence adduced tending to establish a positive contract on the part of the defendants, or either of them, to provide medical attention.

The only question open to debate is, whether there is evidence sufficient to sustain the allegation that the railroad company operated the hospital department for gain and profit. Additional testimony was adduced on that question, and was brought before the jury by oral testimony and by agreed statement of facts. Construing the testimony in the light most favorable to the plaintiff it fails, we think, to show that the railroad company operated the hospital for gain or profit. The stipulation of counsel is as follows:

"It is hereby agreed that the hospital department of the defendant companies, including not only the main and emergency hospitals, but also the attendants, internes, nurses, chief, subordinate and local physicians and surgeons, is maintained from and the cost of maintaining same is deducted from the monthly contributions made to the hospital fund by the employees of defendant companies; that the funds derived from said monthly contributions have heretofore exceeded the amount required to defray all the expenses of said hospital department as aforesaid, and that there was at the time of the injury complained of in the complaint herein, has been ever since and is now a surplus in the hands of the defendants to

the credit of said hospital department, and that said surplus is now under the control of the defendants and subject to check by them for hospital purposes, but that said surplus has not been nor has any part thereof been used by defendant for other purposes than those for which it was contributed.''

It appears from the evidence that certain rules and regulations of the hospital had been promulgated by the railroad company, and the same were brought into the evidence by agreement. The rules show that all employees were to make monthly contributions as per scale fixed according to monthly wages and were entitled to benefits provided by ''the Missouri Pacific-Iron Mountain Hospital Department.'' Benefits included medical and surgical treatment; hospital care in the hospital; medical and surgical appliances; vaccination; and burial allowance.

The rules also prescribe that passengers injured on the companies' lines should be given treatment by the companies' surgeons, at emergency stations and hospital when requested by the superintendent; and that when persons were injured at public crossings the nearest company surgeon should be notified and render services to the injured person; also that when trespassers were injured they should be sent to their homes or placed in charge of the local authorities, and no expense to be incurred on their account, but that in case such injured trespasser should have no family or friends, the nearest local physician shall be notified and furnish first dressing only, and then turn him over to the authorities as above indicated.

Oral testimony was adduced concerning the operation of the hospital, and it appears beyond dispute that the hospital department is maintained entirely from the funds collected, and that there is a large surplus of the hospital fund in the hands of the company over and above the expenditures. The surplus is, according to the testimony, kept on hand for emergencies, such as the construction of hospitals and the purchase of hospital equip-

ment and supplies. The title to hospital property is in a trustee, who is one of the secretaries of the railroad company. The undisputed evidence is also to the effect that the expense of treating injured passengers is paid by the railroad company and does not come out of the hospital fund, but that the assessments from employees is used exclusively for the treatment of employees.

The witnesses testified that no part of the fund was used for gain or benefit of the railroad company. The incidental benefit to the company, in having its employees cared for and avoiding damage suits, is not, according to the law announced in the former opinion in this case, to be considered as such gain or profit as would make the defendant responsible for the negligence of the physicians or surgeons serving in the hospital department.

The undisputed evidence is that the treatment of passengers is done entirely at the expense of the company and is paid for by the company; therefore, there is no gain or profit to the company in that regard.

It is insisted by learned counsel that the fact that there is a large surplus fund which the company holds without paying interest thereon, constitutes an element of gain and profit which is sufficient to characterize the department as one operated for gain, and not as agent or trustee for the employees. We do not think that has anything to do with the case, for, if the railroad company collects the assessments merely for the purpose of furnishing medical and surgical attention, the fact that there is a surplus on hand which could be put out at interest, does not constitute such benefit as would change the character of the defendant's relation to its employees in the operation of the hospital. In accumulating the fund, and also in caring for the surplus, the railroad company is merely acting as trustee for its employees, and it is its duty to keep the fund unless it becomes advisable to invest the surplus in some way. If the company is derelict in its duty as trustee in failing to invest the funds or to account for interest, that is a question which might be raised in a suit by the employees to require the trus-

tee to properly discharge its duty; but, as before stated, the mere fact that it is derelict in its duty and has obtained some benefit by holding the fund, does not change the character of its relation to the employees so as to make it responsible for the negligence of physicians and surgeons employed to give treatment. It is neither alleged nor proved that the railroad company is using this fund for its own advantage, nor that it accumulated the surplus for the purpose of gaining a benefit by way of interest on the fund or investment.

Our conclusion is that, when the principles of law, as announced by this court in the former opinion, are applied to the undisputed testimony, no case is made out, and the trial judge was correct in giving a peremptory instruction. The judgment is, therefore, affirmed.