[Civil No. 2268.   Filed April 18, 1925.]

[234 Pac. 1080.]

## A. A. CARRICK and FRANK J. MANGHAM, Appellants, v. GEORGE W. STURTEVANT, Appellee.

1. CONTRACTS—CONSTRUCTION OF CONTRACT IS QUESTION OF LAW FOR COURT.—Construction of contract is always a question of law for court.

2. CONTRACTS—RULE AS TO PAYING EXISTING DEBT, PAYABLE ON HAPPENING OF CONTINGENCY, AND PAYING OF CONDITIONAL DEBT, STATED.—If existence of debt is conditional on happening of contingency, payment cannot be enforced until contingency happens; but, if debt is existing and payment is contingent on happening of event which does not happen, law requires payment to be within reasonable time.

3. CONTRACTS—WHETHER CONTRACT CREATES UNCONDITIONAL DEBT, OR WHETHER EXISTENCE OF DEBT IS DEPENDENT ON CONTINGENCY, DETERMINED FROM PARTIES' INTENTION, EVIDENCED BY AGREEMENT. Whether contract creates unconditional debt with payment deferred until happening of contingency, or whether existence of debt is dependent on that contingency, must be determined from parties' intention as evidenced by their agreement in light of surrounding circumstances.

4. CONTRACTS—FOR JURY TO DETERMINE MEANING OF AMBIGUOUS CONTRACT WHERE EXTRINSIC EVIDENCE IS CONFLICTING, BUT IF NOT CONFLICTING MEANING IS FOR COURT.—Where contract is ambiguous and extrinsic evidence is conflicting, question is for jury, but interpretation of instrument is still technically for court, and if evidence is not conflicting it is duty of court to interpret contract in light of evidence.

1.   See 6 R. C. L. 862.
3.   See 6 R. C. L. 905.

5. JOINT ADVENTURES—AGREEMENT BETWEEN JOINT ADVENTURERS IN RECLAMATION PROJECT HELD TO CREATE DEBT WHICH DID NOT BECOME ABSOLUTE UNTIL HAPPENING OF CONTINGENCY.—Agreement between joint adventurers in reclamation project, providing that defendants would pay plaintiff $50,000 in installments, to commence when sufficient money was received to start project and insure irrigation corporation as going concern, *held* not to create present indebtedness, but indebtedness became absolute only on happening of contingency stated.

6. TRIAL—INSTRUCTION RELATING TO PLAINTIFF'S RIGHT TO RECOVER UNDER SETTLEMENT AGREEMENT HELD ERRONEOUS AS ASSUMING EXISTENCE OF INDEBTEDNESS.—Where existence of debt sued on depended on happening of contingency, instruction that plaintiff could not recover unless he prove happening of contingency and unless reasonable time had elapsed for defendants to have paid such amount, what is reasonable time to be determined by preponderance of evidence, *held* erroneous as assuming that contract created existing debt and as authorizing jury to find for plaintiff notwithstanding contingency had not occurred.

7. JUDGMENT—THAT ACTION PREMATURE DOES NOT PREVENT RECOVERY IN SUBSEQUENT ACTION WHEN DEBT BECOMES ABSOLUTE.—That action for amount due under contract, making existence of debt dependent on future contingency, was premature, does not prevent recovery on new action after contingency occurs.

See (1) 13 C. J., p. 783. (2) 13 C. J., pp. 564, 684. (3) 13 C. J., p. 565. (4) 13 C. J., pp. 785, 787. (5) 33 C. J., p. 853 (1926 Anno.). (6) 38 Cyc., p. 1657. (7) 34 C. J., p. 777.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Judgment reversed and case remanded.

Mr. C. F. Ainsworth, Messrs. Alexander & Christy and Mr. Hess Seaman, for Appellants.

Mr. R. E. Sloan, Mr. C. R. Holton and Mr. Greig Scott, for Appellee.

LOCKWOOD, J.—George W. Sturtevant, hereinafter called plaintiff, had for some months prior to the spring of 1920 been engaged in a study of the water resources available for the irrigation of the

lands between the Agua Fria and the Hassayampa
Rivers, north of the Buckeye Canal, in Maricopa
county. During this time he had accumulated con-
siderable data in regard thereto, and had made some
preliminary surveys and estimates. He was a civil
engineer of long standing, and with considerable
experience in hydraulic and power development.

About February, 1920, he met A. A. Carrick and
Frank J. Mangham, hereinafter called defendants,
and discussed with them the above situation and its
possibilities, and after some discussion the three
entered into a working agreement, as joint adven-
turers, to promote an enterprise for the reclamation
of the lands referred to. There was no specific
agreement as to the respective duties of the adven-
turers, or their participation in the profits; but in a
general way it was understood defendants were to fur-
nish or procure the capital, and plaintiff was to sup-
ply the engineering skill and experience. About June
23, 1920, the adventurers as the first parties, and the
Salt River Valley Water Users' Association as the
second party, entered into a contract whereby the
second party agreed to sell to the first parties cer-
tain water and power. The amount necessary to be
raised by the adventurers to carry out their part
of the agreement approximated a million dollars—a
sum not possessed by any of them or then available
for the plan. But it was in the height of the boom
of 1920, and financing such a proposition seemed
easy, and enormous profits a certainty. In Septem-
ber, 1920, a corporation was formed by the adven-
turers, known as the Carrick & Mangham Agua Fria
Lands & Irrigation Company, hereinafter called the
Company, and the contract with the Water Users
was assigned to it. In the meantime it appears, as
frequently happens when one party furnishes money
and another spends it, friction began to arise be-

tween the adventurers. It may be that, as suggested by plaintiff, roseate dreams of the future had also aroused that cupidity which seems inherent in most men, and the partners had begun to consider more their individual than the community interests; but that is speculative. At all events, plaintiff, on September 17, 1920, addressed a letter to defendants, in which, after reviewing the situation as he saw it, he suggested a definite written agreement as to the respective rights of the parties, and incidentally that defendants should pay him some $2,000 for past expenses and a salary of $350 a month in the future. Apparently his suggestion was not complied with, for on October 19, 1920, he again wrote defendants suggesting that, in lieu of the one-third of the promotion profits which he believed himself entitled to, he should receive something on a definite basis, and offering three propositions, one of which was for a sale of his interests for $50,000, payable $10,000 in cash and the balance $10,000 every 60 days, with a written contract of purchase or promissory notes signed by defendants for the amount. On October 20, 1920, plaintiff and defendants entered into the following contract:

"Agreement.

"This settlement agreement made this 20th day of October, 1920, by and between A. A. Carrick and Frank J. Mangham, parties of the first part, and George W. Sturtevant, of Phoenix, Arizona, party of the second part, witnesseth:

"That the parties of the first part, for and in consideration of the said party of the second part turning over to the Carrick & Mangham Agua Fria Lands & Irrigation Company all of the options, water rights, surveys, right of way contracts, agreements, maps, plats and field notes of the proposed development of lands and water by the Carrick & Mangham Agua Fria Lands & Irrigation Company, said parties of the first part agree to pay to the said George W. Sturte-

vant the sum of fifty thousand dollars ($50,000), to be paid only as follows, to wit:

"Whenever the said Carrick & Mangham Lands & Irrigation Company shall have received into its treasury sufficient money to start on its project and to insure the corporation as a going concern, they pay to said George W. Sturtevant ten thousand dollars ($10,000) cash, and ten thousand dollars ($10,000) every sixty (60) days until the total of fifty thousand dollars ($50,000) shall be fully paid to the said George W. Sturtevant; they also covenant and agree to and with the said George W. Sturtevant that in case the Carrick & Mangham Agua Fria Lands & Irrigation Company becomes a going concern, then and in that event they will pay, in addition to the above fifty thousand dollars ($50,000), whatever sum said George W. Sturtevant, as engineer for the Carrick & Mangham Agua Fria Lands & Irrigation Company shall be reasonably worth, the same to be estimated at what like service would be, rendered by a first-class, reputable engineer, said sum to be paid in cash whenever this amount is determined; and that, in case said George W. Sturtevant should be retained as an engineer for said project, then, in that event, they agree that the company shall pay the said George W. Sturtevant such reasonable compensation as would be paid a like engineer for like services for said corporation.

"It is mutually agreed between the parties hereto that in case of the sale of the property of the Carrick & Mangham Agua Fria Lands & Irrigation Company at any time before active work of development begins on the same, then and in that event the said party of the second part shall be paid one-third (⅓) of the net proceeds obtained from the sale of said property, up to and not exceeding fifty thousand dollars ($50,000) the same to be paid in cash or as hereinabove stated;

"It is also mutually agreed and understood that the said party of the second part will use his best endeavors in every respect to forward and promote the financing and completion of the contemplated project herein referred to.

"That this agreement shall be in full and complete settlement and discharge of any and every obligation now claimed by the said George W. Sturtevant against said A. A. Carrick and Frank J. Mangham.

"That said party of the second part, George W. Sturtevant, hereby covenants and agrees to and with the said A. A. Carrick and Frank J. Mangham to accept in full payment and discharge of every legal obligation of the said A. A. Carrick and Frank J. Mangham now claimed by the said George W. Sturtevant against said A. A. Carrick and Frank J. Mangham the payment of fifty thousand dollars ($50,000) aforesaid, and the other payments herein specified at the time and on the terms and conditions hereinabove mentioned; and that he will turn over to the said Carrick & Mangham Agua Fria Lands & Irrigation Company all papers and documents hereinabove referred to on the execution and signing of this contract.

"All of the covenants and agreements herein contained shall be mutually binding upon the parties hereto, their heirs and assigns.

"In witness whereof the said parties hereto have executed these presents in duplicate the day and year first above written.

> "A. A. CARRICK,
> "FRANK J. MANGHAM,
> > "Parties of the First Part.
> "GEORGE W. STURTEVANT,
> > "Party of the Second Part."

The contract with the Water Users was extended in December, 1920, and apparently the proposition had not been financed up to July 1, 1921, for on that date plaintiff wrote to defendants insisting that they had made no honest effort to finance the corporation, and had violated the contract in every possible manner, so that he should consider himself free to institute such action as he saw fit, and on the next day he resigned his office as director of the Company. In August, 1921, the Company asked for another extension of time on its contract with the Water Users. A hearing was had by the Water Users on this

question, and plaintiff appeared and opposed the granting of any further time to the Company. On February 27, 1923, nothing having been paid plaintiff by defendants under the contract, he brought suit against them and the Company thereon for $50,000.

The complaint did not set up any breach of contract of claim for damages therefor, but on the contrary alleged performance by plaintiff and that a sum of $50,000 was due him under the terms of the contract, but that it had not been paid. There was another cause of action joined therewith, but it is not involved in this appeal and need not be considered.

The case was tried to a jury, and a verdict rendered against the present defendants for the full amount of $50,000, an instructed verdict in favor of the Company having also been returned. Judgment was duly rendered thereon, the usual motion for new trial made and denied, and an appeal taken from the order denying and from the judgment.

There are a number of assignments of error, but the ultimate question for this court is whether or not the question of there being anything due the plaintiff under the contract was properly submitted to the jury. In order to decide this, we must first construe the contract in order to determine under what circumstances and when anything would be due. The construction of a contract is, of course, always a question of law for the court. The contract reads that in consideration of certain things to be done by the plaintiff, which the evidence shows sufficiently were done by him, "the said parties of the first part agreed to pay to the said George W. Sturtevant the sum of fifty thousand dollars ($50,000) to be paid only as follows, to wit." Then follow two distinct contingencies, on the happening of either of which the money was to be paid. The second con-

tingency refers to the sale of the property of the Company at any time before active development began on the same, and as counsel for plaintiff expressly disclaimed any right to recover under that provision, we may, for the present, disregard it.

We come, then, to the other contingency, which reads as follows:

"Whenever the said Carrick & Mangham Lands & Irrigation Company shall have received into its treasury sufficient money to start on its project and to insure the corporation as a going concern, they pay to said George W. Sturtevant, etc. . . . "

To the man of ordinary intelligence, unversed in the rules of law, it would seem that defendant agreed to pay "only as follows, to wit, whenever the said . . . company shall have received into its treasury sufficient money to start on its project and to insure the corporation as a going concern," and that until such condition was fulfilled nothing was due.

Plaintiff contends, however, that where a present indebtedness exists and the payment thereof is made to depend upon the happening of a future contingency which may or may not occur, it is, in law, a promise to pay within a reasonable time. We think the true rule is well stated in the case of *Greenstreet* v. *Cheatum et al.,* 99 Kan. 290, 161 Pac. 597:

"If the existence of the debt is conditional upon the happening of a contingency, payment, of course, cannot be enforced until the contingency happens. On the contrary, if a debt was in fact created and an absolute liability arose, payment of which was to be made upon the happening of an event which does not happen, the law requires payment to be made within a reasonable time. The intention of the parties as evidenced by their agreement and the attending circumstances must determine whether the debt is contingent or absolute."

See, also, *Nations* v. *Stone,* 92 Okl. 18, 217 Pac. 1031.

What is the meaning of the contract? Was it the creation of an unconditional debt, the payment of which was deferred until the happening of a future event; or was it the existence of the debt which is dependent upon that contingency? It is the intention of the parties, as evidenced by their agreement in the light of the attending circumstance, which must determine. Ordinarily, the legal effect of a contract is, of course, for the court; but where its terms are ambiguous, and it is necessary to turn to extrinsic and conflicting evidence to determine the true meaning, the question should be submitted to the jury, under proper instructions from the court. The interpretation, however, is still technically a matter of law for the court, and if the extrinsic evidence is not conflicting, it is the duty of the court to construe the contract in the light of that evidence. *Licking Rolling Mill Co.* v. *Snyder* (Ky.), 89 S. W. 249; *Keyes Farm & Dairy Co.* v. *Prindle,* 249 Mo. 600, 155 S. W. 391.

In the case at bar it is obvious that on October 19, 1920, the parties were joint adventurers, and, so far at least as to the matter in dispute in this appeal, there was no existing indebtedness. It is equally plain that if one arose on October 20th, it was created by the so-called settlement agreement in some way. We have examined the reporter's transcript with care, and there is no conflict therein in the evidence, so far as it bears on the question of whether or not it was the intention of the parties to create a present indebtedness payable on a later contingency, or whether the debt itself arose only on such contingency. Under such a state of affairs, the construction of the contract is still for the court. It is plain beyond dispute that the property and rights transferred by plaintiff as a consideration for the $50,000 had no actual present value to him, to

defendants, or to anyone else, as the situation stood on October 20, 1920. Unless in some manner that situation was changed, they were worthless. They had, it is true, a great potential value; but such value could only become available to plaintiff or defendants, or indeed to anyone, upon the happening of one of two things. Either the Company must carry out its plans of improvement or must sell its rights, which consisted principally of the property transferred by plaintiff and the agreement with the Water Users' Association, to someone else. Unless and until one of these things occurred, the transfer could be of no possible benefit to defendants. Is it reasonable to believe that on such a state of affairs, and in view of the language of the contract, they would have assumed an absolute liability of $50,000 in exchange for something which might never become of value, and is it not far more reasonable to conclude that the parties all figured that plaintiff was receiving a perfectly fair settlement, when it was provided that upon defendants' being insured a reasonable prospect of profits, then, and then only, should they be indebted to him?

It is true that plaintiff's offer in his letter of October 19th, if accepted by defendants, would have constituted an absolute indebtedness. There is no evidence, however, it was ever accepted, but, on the contrary, the contract, as finally adopted apparently was worded so as to eliminate that very thing by including terms which can only be reasonably explained on the theory that defendants refused to agree to the creation of a present debt. In plaintiff's letter of July 1, 1921, he says:

"You were to cause to be paid to me . . . as soon as . . . the company should have received into its treasury sufficient money to start on its project and to insure the corporation as a going concern. . . . You have had ample time to carry out the provisions

of said contract and that part at least, to a reasonable extent. . . . So far as I can learn you have not even made an honest effort to do so.''

Nowhere therein is there a suggestion that the $50,000 was to be paid regardless of the contingency set forth in the contract, plaintiff's grievance apparently being that defendants had not tried in good faith to finance the company. On the undisputed facts as shown by the evidence, we are of the opinion that there was no intention to create a present indebtedness by the contract of October 20, 1920, but that it was the understanding of the parties, as expressed in the contract, that such indebtedness should become absolute only upon the happening of one of the contingencies set forth therein. Such being the meaning of the contract, it was necessary for plaintiff, in a suit to recover thereon, to prove that the Company ''shall have received into its treasury sufficient money to start on its project as. to insure the corporation as a going concern''; the other contingency having, so far as this suit is concerned, been waived by plaintiff. The court instructed the jury that plaintiff could not recover unless he had proved the happening of the contingency, but added as follows:

''Unless you further find from the preponderance of the evidence that a reasonable time had elapsed prior to the commencement of this action in which defendants Carrick and Mangham may have paid said amount in view of all the evidence introduced in this case, it is for you to determine, from the preponderance of the evidence introduced in this case, what was a reasonable time for defendants Carrick and Mangham to discharge said obligation.''

This was fatal error, for it assumed necessarily the contract established an existing debt, and authorized the jury to return a verdict for plaintiff notwithstanding the contingency had not occurred.

Counsel for plaintiff contended with great zeal and earnestness, on the oral argument, that the whole case was a fraudulent attempt on the. part of defendants to rob an old man of the rightful fruits of his labor. If this be true, he has an ample remedy, but it is not by an action of this nature. If it appears, either now or in the future, that either of the contingencies set forth in the contract has occurred, the fact that this suit may have been prematurely brought does not prevent a recovery in a new action. But in this particular case, in order to prevail, plaintiff must, under proper instructions as to the legal effect of the contract, present sufficient evidence to show that under it, as we construed it, the sum set forth therein was due at the commencement of the action.

This was not done at the trial below, and the judgment appealed from is therefore reversed and the case remanded for a new trial.

McALISTER, C. J., and ROSS, J., concur.