[Civil No. 2379.   Filed November 21, 1925.]

[240 Pac. 1031.]

ALVINA KREIG and MICHAEL KREIG, Appel-
lants, v. VINTON HAMMELS, Appellee.

1. CONTRACTS — CONSTRUCTION OF CONTRACT, PLAIN ON ITS FACE, IS
FOR COURT.—Construction of contract is for court, when contract
is plain on its face.

2. CONTRACTS — DETERMINATION OF FACTS NECESSARY TO DETERMINE
AMBIGUITIES IN CONTRACT IS FOR JURY. — Determination of sur-
rounding facts and circumstances, consideration of which is neces-
sary to determine ambiguities in contract, is for jury.

3. CONTRACTS — WRITTEN INSTRUMENT CONSTRUED TO SUSTAIN ALL
CLAUSES.—Written instrument should be so construed, if possible,
as to sustain all clauses thereof.

4. LANDLORD AND TENANT—LESSEE HELD ENTITLED TO USE ALL NECES-
SARY ELECTRIC POWER FOR IRRIGATION, AT ANY TIME, AND AT ANY
COST, WITH RIGHT TO BE REIMBURSED BY LESSOR AS TO COST EX-
CEEDING CERTAIN AMOUNT.—A lease *held* to give lessee the privi-
lege of using electric power for irrigation, so far as available, at
the reduced rate given to lessors, under latters' contract with
water users' association with the right to turn to "on peak"
service if it was needed, with right to be reimbursed by lessors
as to cost of power exceeding reduced rate.

---

1.   See 6 R. C. L. 862.

2.   See 6 R. C. L. 862.

3.   See 6 R. C. L. 837.

5. APPEAL AND ERROR—DEFENDANTS MAY NOT COMPLAIN OF FAVORABLE CONFLICT IN INSTRUCTION.—Defendants *held* not entitled to complain of conflict in instruction, which was in their favor.

6. LANDLORD AND TENANT—LESSEE TO WHOM LESSORS WERE LIABLE FOR COSTS OF ELECTRIC POWER EXCEEDING MINIMUM COST, WHETHER USED DURING ON OR OFF PEAK SERVICE, NOT REQUIRED TO SEGREGATE ACCOUNTS, AMOUNT NOT BEING IN DISPUTE.—Where lessors were liable to lessee for the cost of electric power used by lessee, in excess of certain minimum cost, whether such power was used during "on peak" or "off peak" service, it was not necessary to segregate the accounts, where there was no dispute, as to the amount of costs in excess of the minimum costs.

See (1) 13 C. J., p. 785.  (2) 13 C. J., p. 785.  (3) 13 C. J., p. 527.  (4) 36 C. J., p. 38.  (5) 4 C. J., p. 920.  (6) 36 C. J., p. 38.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Mr. Frederick H. Griffith, for Appellants.

Messrs. Armstrong, Lewis & Kramer, for Appellee.

LOCKWOOD, J.—Vinton Hammels, hereinafter called plaintiff, filed his complaint against Alvina Kreig and Michael Kreig, hereinafter called defendants, setting up two causes of action, in the first claiming damages by reason of an alleged shortage in the acreage in certain land which plaintiff had leased from defendants, and, in the second, praying for judgment for $1,380, being the amount plaintiff had paid for excess electric power and which he claimed defendants were under obligation to repay to him. The case was tried before a jury, which returned a verdict for the defendants on the first cause of action, and for the plaintiff in the sum of $1,380 on the second. The usual motion for new trial was duly filed and overruled, and the defendants have appealed to this court.

There are some eight assignments of error, but, since they were argued as a whole, we will consider them in the same manner, as there is but one real legal question in issue.  Plaintiff had leased from the defendants certain land in the Salt River Valley, and the determination of this case depends upon the construction of certain clauses of the lease regarding the power to be furnished for pumping water.  We quote these clauses as follows:

"(5) It is further stipulated and agreed that party of the second part shall be entitled to use the pumping plant, pipe line, and equipment connected therewith, for $7/8$ of the time; the remaining $1/8$ of the time belonging to first party or to other tenants.  The party of the first part shall maintain the said pumping plant, pipe line, and equipment in its present good order and repair, at her own proper cost, save and except, however, that any and all damage or injury thereto occasioned by the fault, neglect, or carelessness of the party of the second part shall be borne and paid for by the party of the second part; and provided, further, that, in the event of repairs being necessary, chargeable hereunder to the party of the first part, the party of the second part shall forthwith notify the party of the first part, or her agent, and in their absence the party of the second part shall promptly, and as reasonably as possible, cause said repairs to be made, and the cost thereof shall be borne by party of the first part.

"($5\frac{1}{2}$) Party of the first part has a contract or agreement with the Salt River Valley Water Users' Association covering the furnishing to first party with power to run and operate the said power plant; and party of the first part hereby agrees, so far as not inconsistent with the terms and provisions of said power agreement, to furnish power for water and pumping at the same rates that first party is chargeable under said agreement, that is to say, first party will not charge second party any greater sum than first party is obligated to pay for said power under

said agreement, and in other proper ways party of the second part shall be entitled to the benefit of said power agreement.

"(5A) Party of the second part shall pay for power for pumping and supplying said water, up to and including the sum of eight dollars per acre per year and in the event that water is required for said premises in excess of that charge, the overplus shall be borne by party of the first part. It is further agreed that the above-mentioned pumping plant, pipe line, and equipment, above mentioned, is not now installed, but that party of the first part shall cause the same to be installed and ready for use on or before the 20th day of February, 1922, delays by strikes, acts of God, or other causes beyond the direct control of the party of the first part excepted.

"(6) Party of the second part shall farm said premises in a first class and farmer like manner. . . . "

It will be noted that paragraph (5½) of the lease refers to a certain contract or agreement with the Salt River Valley Water Users' Association. The portion of that agreement necessary to be considered is as follows:

"Part 3. It is further understood and agreed that the contractor shall receive and use said electric energy only between the hours of 4:30 p. m. and 7:30 a. m. daily, except that said electric energy may be received and used continuously from 4:30 p. m. of any Saturday to 7:30 a. m. the following Monday, subject to conditions hereinafter contained.

"Article 2. Part 1. In consideration whereof, the contractor agrees to pay for said electric energy received under this agreement at the rate of one cent per kilowatt hour."

It is, of course, the law that, when a contract is plain and unambiguous on its face, its legal construction is for the courts. 13 C. J. 783. If, however, there are ambiguities therein, and it is necessary to

take into consideration the surrounding facts and circumstances in determining its meaning, it is for the jury to determine what those facts and circumstances were; but the court, when all the facts are once established, always decides the legal meaning thereof. *Carrick et al.* v. *Sturtevant,* 28 Ariz. 5, 234 Pac. 1080.

It is the contention of the defendants that the legal effect of the lease is that they would pay for all power required to irrigate properly the lands in question in excess of eight dollars per acre, if, and only if, it was used from "off peak" current under their contract with the Water Users' Association.

Plaintiff claims that the lease gave him the right to use all necessary power, wherever obtained and at whatever cost, and that clause (5½) was not a limit on the amount and kind of power to be used, but a guarantee to him that he should have the benefit of the cheap power rate set forth therein, so far as it was available.

We think the contract is unambiguous on its face, and the latter construction is the true one. It will be noted that nowhere in the lease is there any specific provision denying the right to use "on peak" service if needed, or expressly stating that defendants would only pay for the "off peak" current. A written instrument should be so construed, if possible, as to sustain all clauses thereof, and defendants' contention would, in effect, add a provision which might nullify their promise to pay for excess power, for if the full amount of "off peak" current available cost less than eight dollars per acre, as it apparently did, they would be relieved of liability to pay anything, notwithstanding far more was needed to irrigate properly the land in question.

On the other hand, under plaintiff's theory, he was given the privilege of using cheap power, so far as

available, at the reduced terms given defendants under their contract, with the right to turn to the "on peak" service if it was needed, and be protected as to his total water cost under clause (5A), thus making effective all clauses of the lease. Such being the true construction of the lease, the instructions asked for by defendants, being predicated on a wrong theory thereof, were properly refused. For the same reason the court properly gave the two instructions of its own motion which were complained of. It is true they were somewhat in conflict with another one given before, but the conflict was in favor of defendants, and they may not complain thereof.

There was no dispute as to the amount in excess of eight dollars per acre actually paid by plaintiff, and since defendants were liable therefor whether it was either on or off peak current, it was not necessary to segregate the accounts.

Finding no prejudicial error in the record, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.