[Civil No. 2824. Filed October 21, 1929.]

[281 Pac. 211.]

MILLER CATTLE COMPANY, a Corporation, Appellant, v. D. M. FRANCIS, as Surviving Partner of the Firm Composed of D. M. FRANCIS and HUGH E. CAMPBELL, Formerly Doing Business Under the Firm Name and Style of CAMPBELL, FRANCIS & COMPANY, and D. M. CAMPBELL, as Administrator of the Estate of HUGH E. CAMPBELL, Now Deceased, Appellees.

See Contracts, 13 **C. J.**, sec. 968, p. 771, n. 50; sec. 996, p. 785, n. 83; sec. 997, p. 785, n. 89, p. 786, n. 98.

Evidence, 22 **C. J.**, sec. 1570, p. 1175, n. 44; sec. 1583, p. 1183, n. 78.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellant.

Messrs. Clark & Clark and Messrs. Stockton & Perry, for Appellees.

LOCKWOOD, C. J.—This is an action brought by Miller Cattle Company, a corporation, hereinafter called plaintiff, against D. M. Francis as surviving member of the partnership composed of Francis and Hugh Campbell, and D. M. Campbell as administrator of the estate of Hugh Campbell, deceased, hereinafter called defendants, to recover a sum alleged to be due from the partnership for pasturage and feed furnished the partnership under the terms of a certain written agreement.

The case was tried to a jury, but the court, after the close of plaintiff's case, instructed a verdict for defendants, and from the judgment rendered on that verdict and the order overruling the motion for a new trial this appeal is taken.

There are four assignments of error which in effect raise but one question for our consideration, to wit, the meaning of a certain part of the contract. This contract, so far as material to the decision of this case, reads as follows:

"That said party of the first part (plaintiff) in consideration of . . . the payment to them of the sum of Five Thousand ($5000.00) Dollars in cash, . . . do hereby . . . agree to furnish at the times and in the manner hereinafter provided, pasturage for sheep upon these lands . . . described as follows: . . . The period of pasturage shall commence November 1st, 1927, and extend to March 1st, 1928, . . . except also that feed will be provided from said lands and the hay hereinafter mentioned, from March 1st, 1928, to May 1st, 1928, for all ewes without lambs at the rate of two and one half cents (.02½¢) per day per head, and for ewes with lambs at the rate of four cents (.04¢)

per day per head. That the rate to be paid for said pasturage by second parties (the partnership) is the sum of two and one half cents (.02½¢) per day per head from November 1st, 1927, to March 1st, 1928. First parties further agree to sow barley on all of said premises. . . . First party agrees to keep available for the use of second parties seventy five tons (75) of dry alfalfa threshed hay, and also to hold for the use of second parties all hay now stacked on said premises to the extent of twenty two (22) stacks, and to provide for the use of second parties in the handling of said hay, three wagons and three teams. . . . That said second parties . . . do hereby purchase the pasturage upon said premises at the rates and upon the terms and under the conditions hereinbefore stated, and agree to pay therefor during said period not less than Seven Hundred Twenty Thousand (720,000) sheep feed days, at the rate of two and one half cents (.02½¢) per day, and to pay for the hay hereinbefore mentioned upon the basis of three pounds (3 lbs.) per day, per head, as long as said hay shall last, *it being the purpose and intent of this agreement that said second parties shall pay for said pasturage and hay at the rates above mentioned not less than the sum of Eighteen Thousand ($18,000.00) Dollars.* That at the end of each thirty days (30) of said period of pasturage said second parties agree to pay to first party for· all pasturage consumed during said period. That the sum of Five Thousand ($5000.00) Dollars paid to first parties upon the execution of this agreement shall not be credited to second parties in the payment of pasturage furnished hereunder until the aggregate monthly payments have equaled the sum of Thirteen Thousand ($13,000.00) Dollars, it being the purpose and intent hereof that said initial payment shall be credited upon the last amount due from second parties under this agreement. . . . '' (Italics ours.)

The portion of the contract italicized is the bone of contention. It is claimed by plaintiff that it means a minimum guaranty to it of $18,000 for pasturage and hay during the period from November 1st, 1927, to March 1st, 1928, with additional payment for any

feed furnished after the latter date, while defendants insist the guaranty is for the period from November 1st, 1927, to May 1st, 1928, and that pasturage or feed furnished during any part of that period should be applied on it.

The trial court adopted the interpretation of the defendant, and, since plaintiff's evidence showed that it had received the full $18,000 and that, using the per diem rates set forth in the contract, not more than that value of pasturage and feed had been furnished altogether, directed the verdict.

It is the law that if a contract is plain and unambiguous in its terms, the determination of its legal effect is for the court alone. *Carrick et al.* v. *Sturtevant,* 28 Ariz. 5, 234 Pac. 1080; *Kreig* v. *Hammels,* 29 Ariz. 280, 240 Pac. 1031; 13 C. J. 783. On the other hand, if an ambiguity exists, extrinsic evidence is admissible to show its true meaning, and if there is a conflict in the evidence the question is for the jury, under proper instructions from the court. *Carrick et al.* v. *Sturtevant, supra; Kreig* v. *Hammels, supra;* 13 C. J. 785.

The first question for us then to consider is whether or not the contract is ambiguous. We are decidedly of the opinion that it is. On the one hand, the only "period of pasturage" mentioned in express terms is that from November 1st to March 1st the language covering the period from March 1st to May 1st, stating "except also that feed will be provided from said lands and the hay hereinafter mentioned," and the partnership purchased "the pasturage upon said premises at the rates and upon the terms and under the conditions hereinbefore stated, and agree to pay therefor during said period not less than Seven Hundred Twenty Thousand (720,000) sheep feed days, at the rate of two and one half cents (.02½¢) per day," which amounts exactly to the $18,000 guaranty. The rate at which the 720,000 days was to be figured

is a fixed one of two and one-half cents per day, and this was the only rate during the period from November 1st to March 1st. The rate thereafter, for part of the sheep at least, might be different from that at which the 720,000 days, the apparent basis of the guaranty, was to be figured.

On the other hand, the summary of the amount of the guaranty refers to the "rates" and not the "rate" on which it was calculated, and during the first period there was only one "rate"; it being necessary to go into the second period to find any "rates." Further the initial payment of $5,000 was to be credited "upon the last amount due from second parties under this agreement," and after the payment of monthly installments amounting to at least $13,000. It was evidently contemplated that the sheep might be fed after the 1st of March, and there is no express provision the $13,000 be paid before that date, yet this amount with the $5,000 final payment would make the total guaranty.

The contract is clearly one of the class which requires and permits extrinsic evidence to determine its true meaning. This was recognized shortly after its execution by the partnership itself, for it was so stated in a letter to plaintiff. In that letter they say: "All of us . . . have read, studied and reread the agreement . . . and while we know what agreement we made, we cannot understand the writing. It isn't clear to us, and we believe it fails in many respects in accurately stating our agreement with reference to the pasture and feed for sheep." They then continue with a statement of their understanding of the meaning of the contract, and conclude as follows: "If you understand our agreement as we have herein stated it, this letter and your reply will so explain and supplement the writing as to make the same clear. Will you please advise at your early convenience." To this letter plaintiff replied, expressly approving of

part of the interpretation of the contract given therein and being silent as to the balance, and the oral evidence on behalf of plaintiff was that the interpretation given by the partnership in their letter was accepted by it.

In case of an ambiguity in a contract, the interpretation placed on it by the parties through their acts or language is admissible to show the true meaning. *Powers* v. *World's Fair Min. Co.*, 10 Ariz. 5, 86 Pac. 15; *Valentine* v. *Shepherd*, 19 Ariz. 241, 168 Pac. 643.

In the letter written at the instance of the partnership and properly admitted in evidence there is language which, unless contradicted or explained, in our opinion, shows that the interpretation placed on the vital clause of the contract by plaintiff was the correct one. Such being the case, the trial court erred in directing a verdict when it did. It should have allowed defendants to present their evidence, and submitted the issue to the jury under proper instructions on the case as it then appeared.

The judgment is reversed and the case remanded for a new trial.

McALISTER and ROSS, JJ., concur.