[Civil No. 3001. Filed April 27, 1931.]

[298 Pac. 631.]

MILLER CATTLE COMPANY, a Corporation, Appellant, v. D. M. FRANCIS, as Surviving Partner of the Firm Composed of D. M. FRANCIS and HUGH E. CAMPBELL, Formerly Doing Business Under the Firm Name and Style of CAMPBELL–FRANCIS & COMPANY, and D. W. CAMPBELL, as Administrator of the Estate of HUGH E. CAMPBELL, Now Deceased, Appellees.

See former opinion, 35 Ariz. 535, 281 Pac. 211.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Messrs. Clark & Clark, Messrs. Stockton & Perry, Mr. E. G. Frazier, Mr. Thomas P. Riordan and Mr. Stanley A. Jerman, for Appellees.

ROSS, J.—The plaintiff and defendants entered into a contract by the terms of which plaintiff sold and leased to defendants certain hay and pasturage for the latter's sheep during the winter season of 1927–1928. The controversy is over the meaning of the contract and the respective obligations of the parties thereto.

It is the contention of defendants that they agreed to pay, and did pay, to plaintiff $18,000, for which plaintiff agreed to furnish them hay and pasturage for their sheep from November 1, 1927, to March 1, 1928, at 2½ cents per head per day, and from March 1st to May 1st at 2½ cents per head per day for ewes without lambs, and 4 cents for ewes with lambs.

Plaintiff contends that the agreement was that it should receive, at all events, for such hay and pasturage, $18,000 for the period from November 1, 1927, to March 1, 1928, and as much more as the hay and pasturage came to figured on the basis of 2½ cents per head per day for that period, and 2½

cents per day per ewe without lamb, and 4 cents per day per ewe with lamb after March 1, 1928.

Defendants admit receiving under the contract $18,500.90 worth of hay and pasturage.

Plaintiff claims, in addition to the $18,000 paid it by defendants, $5,830.44 for hay and pasturage for March and April of 1928.

The case has been tried twice. At the first trial the plaintiff introduced the contract, a letter from defendants to plaintiff, dated September 2d, calling plaintiff's attention to certain obscurities in the contract, and plaintiff's answer thereto, and rested. Defendants thereupon moved the court for an instructed verdict upon the theory that the contract was not ambiguous, and such motion was granted. Upon an appeal to this court (35 Ariz. 535, 281 Pac. 211), we examined the contract and the contentions of both parties and concluded that "the contract is clearly one of the class which requires and permits extrinsic evidence to determine its true meaning." In other words, we held that the contract was ambiguous and uncertain, and that the parties might by proper evidence show what their true contract was. We accordingly reversed the judgment and remanded the case for a new trial. We refer to our former opinion for a statement of the facts.

In the second trial the defendants and others who were present during the conversations between S. C. Miller, president of the plaintiff, and the defendant Francis and his agents and employees, testified as to what was said, which testimony corresponded with the contentions of the defendants, as above stated. The two letters referred to as evidence in the first trial were also introduced in evidence. The jury's verdict was in favor of defendants. The appeal is from the judgment and the order overruling motion for a new trial.

In our former opinion we said the contract was ambiguous, and that such ambiguity was not removed by the evidence introduced. We also said of defendant's letter of September 2d:

" . . . There is language which, unless contradicted or explained, in our opinion, shows that the interpretation placed on the vital clause of the contract by plaintiff was the correct one. Such being the case, the trial court erred in directing a verdict when it did. It should have allowed defendants to present their evidence, and submitted the issue to the jury under proper instructions on the case as it then appeared."

The plaintiff, seizing the court's expression of opinion on the probative effect of defendants' letter, at the trial made the point, and now urges it, that the court, upon the plaintiff's motion therefor, should have directed a verdict in its favor, because no contradiction or explanation of the letter appeared in defendants' testimony.

The letter referred to as sustaining plaintiff's interpretation of the contract is not the contract or any part of the contract. It would not be even proper evidence unless the contract were ambiguous. Like any other evidence introduced for the purpose of aiding in the determination of the intention of the contracting parties, when such intention is obscure and uncertain, it is subject to explanation or contradiction. The probative value of evidence is for the triers of the facts, and that is true whether such evidence is written or oral. What was said by the court as to the weight or force of any particular piece of evidence was not necessary to the decision of the only question before it, to wit, "the meaning of the contract." If its meaning cannot be ascertained within its four corners, then it is ambiguous. Having decided that the contract was ambiguous, thereafter it was the duty of the court to rule upon the compe-

tency and admissibility of evidence, but not its weight or its tendencies, those being questions for the triers of the facts.

Whatever was said in our former opinion, if necessary to a decision of the questions before us, has become the law of the case and should be strictly adhered to in all further proceedings in the case. *Pearson* v. *Arkansas Midland R. Co.*, 106 Ark. 442, 153 S. W. 595; *Arizona-Parral Min. Co.* v. *Forbes*, 16 Ariz. 395, 146 Pac. 504. But what we said of the evidence, or any of the evidence, outside of the contract itself, was unnecessary to a decision of the question before us, that question being whether the contract was upon its face ambiguous and uncertain.

The case was remanded for a new trial generally. The mandate did not limit the issues. The purpose of the retrial was to clarify the ambiguity and uncertainty we found to exist in the contract. Upon that question each party was entitled to introduce evidence, and in case of conflicts it was for the jury to say which was right. The competency of the evidence was for the court, but its weight for the jury, to determine. The court could not say, as a matter of law, that what was said in the letter of September 2d was true and binding upon defendants. The court could only submit the letter, together with all other proper evidence, to the jury for its consideration in arriving at a verdict.

The motion for a directed verdict upon the ground asserted was properly denied.

The same question was raised by a requested instruction. What is said in the disposition of the first assignment controls as to this one.

There was introduced considerable evidence tending to sustain the construction of the contract contended for by defendants. In the negotiations carried on prior to the signing of the contract, the plaintiff was

represented by its president, S. C. Miller. Representing the defendants were John B. Duerson, bookkeeper for Campbell-Francis & Company, and D. M. Francis, surviving partner. The parties were introduced to each other by Mason Bankhead, who was also present during the negotiations and heard the conversations. Duerson's testimony, as to how the $18,000 paid plaintiff was to be applied, was as follows:

"Q. During any of these conversations that you have testified to or any that you haven't testified to, if there were any others, was there anything said by Mr. Miller that he had to have $18,000 up to the 1st of March, 1928? A. No, there was not.

"Q. That wasn't mentioned at all? A. No.

"Q. Was there any time limit set upon the period within which you were to feed up $18,000 worth of feed that season? A. May 1st.

"Q. May 1st, 1928? A. Yes sir, that was the period of the contract.

"Q. Is that what Mr. Miller said or did you state it to him and it was agreed to, how was that? A. That we had to pay $18,000 up to the 1st of May?

"Q. Yes. A. I don't remember how that was said.

"Q. But you do remember that was the agreement? A. That was the agreement."

D. M. Francis' testimony on the same proposition was, in part:

"Q. Did you understand from anything that was said by Mr. Miller or any of the others that were present when you were talking over this contract before it was signed that you were expected to pay $18,000 on it by the 1st of March whether the feed was there or not? A. No, that we were to pay $18,000 during the life of this contract up to May 1st as I understood it."

Mason Bankhead said in part:

"Q. If you recall anything that was said by Mr. Miller or to Mr. Miller as to the length of time the

sheep or grazing period was to run you may state it. A. Mr. Miller was told that no contract could be considered for sheep feed unless it run to the 1st of May. They told him that on the start and if he wouldn't agree on a contract to the 1st of May there wouldn't be any contracts made.

"Q. You may state whether or not anything was said within your hearing to the effect that $18,000 had to be paid by the 1st of March regardless of whether it was fed up or not? A. There was no such thing said. He said he wanted an $18,000 guarantee or else he wouldn't put his ranch into sheep feed for that year."

Miller, testifying in behalf of plaintiff, said the minimum of $18,000 was to cover hay and pasturage to March 1st only. In support of plaintiff's case, the letters adverted to in our former opinion were also introduced. Thus, there was created a clear conflict in the evidence. And if, as we said in our former opinion, the language in defendants' letter showed that plaintiff's interpretation of the contract was correct, such language was contradicted by the evidence on the trial.

In a situation wherein it has been determined that the contract is uncertain and ambiguous, and extrinsic evidence has been taken with a view of clarifying its meaning, the rule is as follows:

"It is the intention of the parties, as evidenced by their agreement in the light of the attending circumstances, which must determine. Ordinarily, the legal effect of a contract is, of course, for the court; but where its terms are ambiguous, and it is necessary to turn to extrinsic and conflicting evidence to determine the true meaning, the question should be submitted to the jury, under proper instructions from the court."

*Carrick* v. *Sturtevant*, 28 Ariz. 5, 234 Pac. 1080. See, also, *Powers* v. *World's Fair Min. Co.*, 10 Ariz. 5, 86 Pac. 15; *Kreig* v. *Hammels*, 29 Ariz. 280, 240

Pac. 1031; *Rio Grande Oil Co.* v. *Upton Oil Co.*, 33 Ariz. 474, 266 Pac. 3.

This rule is not affected by the fact that the evidence of one of the parties is inconsistent. If he has made admissions contrary to his testimony at the trial, still it would be for the jury to determine which time he told the truth. Discrepancies in a party's evidence may affect its weight, but not its competency.

We think, under the evidence, the question as to whether the $18,000 paid to plaintiff was to spread over the entire period from November 1, 1927, to May 1, 1928, or only up to March 1, 1928, was properly submitted to the jury.

Complaint is made of the court's ruling in the admission of testimony and in refusing to strike such testimony upon plaintiff's motion. D. W. Campbell, who was not present and did not participate in the negotiations and conversations leading up to the contract, testified that it was his understanding that the $18,000 minimum should cover the period from November 1st to May 1st. This testimony as to witness' understanding was without question incompetent. *Diamond* v. *Shriver*, 114 Md. 643, 80 Atl. 217; *Bullock* v. *Consumers' Lumber Co.*, 3 Cal. Unrep. Cas. 609, 31 Pac. 367. After the testimony was admitted the court refused to strike it, and in this committed error. However, later in the course of the trial the defendants, speaking through one of their attorneys, confessed the admission of the testimony, as also the refusal to strike it, was error, and asked the court to grant the motion to strike, which the court did in the following language:

"That was the testimony, gentlemen, given by Mr. Campbell this morning when he was on the stand. He was asked in regard to his understanding of this contract and all the evidence that he gave in that

respect the Court will strike out and instruct the jury to disregard it."

Testimony so clearly incompetent should not, over objection, have gotten to the jury. It is not surprising that defendants should have asked that it be stricken and the jury instructed to disregard it. Error though it was to admit it and not to strike it promptly, we do not feel the case should be reversed on that ground. The character of the evidence was not likely to appeal to the jury's common sense. It is apparent that the witness was merely expressing his opinion or understanding of the contract and not anything of his own knowledge. If such testimony made any impression whatever upon the jury, doubtless such impression was removed by the court's instruction to disregard it. It appears to us that the error was not prejudicial.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.