[Civil No. 3090.   Filed January 26, 1932.]

[7 Pac. (2d) 255.]

CHANDLER IMPROVEMENT COMPANY, a Corporation, Appellant, v. JOHN ANDERSEN, Appellee.

Mr. Arthur E. Price and Mr. Frank W. Beer, for Appellant.

Mr. David A. Keener, for Appellee.

LOCKWOOD, J. — Chandler Improvement Company, a corporation, hereinafter called plaintiff, brought suit against John Andersen, hereinafter called defendant, to recover from him the sum of $4,046.36, alleged to be due it as a balance on a certain contract to which we shall hereafter refer. There were three causes of action in plaintiff's complaint, but as defendant admitted liability on the second and third, a directed verdict was granted thereon, and we need not consider them. Defendant answered and counterclaimed on the first cause of action, and the matter was tried to a jury, which returned a verdict in favor of defendant in the sum of $190, and after the usual motion for new trial had been overruled, plaintiff brought the matter before us for review.

The facts in the case, as far as material to the determination of the appeal, may be stated thus: On February 3, 1930, plaintiff and defendant entered into a written contract, the material part of which is as follows:

"That the party of the first part has furnished to the party of the second part 263 steers of the age of upwards of two years for feeding purposes.

"The party of the second part agrees to feed said steers ensilage and other feeds for the purpose of fattening the same. The said party of the second part agrees to feed the same until they are fat enough to market, but not to exceed an average of ninety days; and provided, further, that none of said cattle

shall be fed for a longer period than ninety days. All expenses and costs whatsoever necessary for feeding said animals shall be paid by the party of the second part.

"The cattle are weighed in at the gross weight of 158,680 pounds, and with a four per cent. shrinkage, at the net weight of 152,333 and at the agreed price of ten cents per pound.

"The said animals shall be weighed out at the conclusion of the feeding period, at the agreed price of twelve cents per pound, with a four per cent. shrinkage.

"The cattle shall be weighed in and out upon scales at the Andersen Ranch, one mile west of Chandler, Arizona.

"The difference between the weighing in price and the weighing out price shall be the amount payable to the party of the second part in consideration for the feeding and care of the animals as described above . . . ''

Pursuant to this contract defendant, as the party of the first part, delivered to plaintiff, as the party of the second part, 263 steers, which steers were fed by plaintiff on green pasture for approximately six weeks, and for the balance of the ninety days from the date of delivery in plaintiff's corral on ensilage, hay, and cotton-seed meal. At the conclusion of the ninety days plaintiff delivered the steers to defendant at his ranch, and they were weighed out, less shrinkage, at 204,552 pounds net. Thereafter defendant paid plaintiff the sum of $5,000, for which credit was given him upon the amount due under the contract, as computed by plaintiff. The balance was never paid, and the first cause of action herein was brought to recover it.

The answer and counterclaim of defendant sets up in substance that plaintiff had failed to comply with its obligation under the contract in that it had agreed thereby to make the cattle fat enough for market within the ninety days set forth therein, and that at

the expiration of such time only a few of them were in marketable condition, and the balance not being fat enough, defendant was compelled to feed them and later sell them at a loss, or to hold them, and that his total loss by reason of the failure of plaintiff to comply with its alleged agreement to fatten said cattle for market within the ninety days was $5,034.80. He further alleged that immediately before the weighing back of the cattle to him plaintiff placed them in a corral where no feed was available, thereby causing them to drink about sixty pounds of water each, so that when they were weighed back plaintiff charged him for an excess of sixty pounds per head, which was really water, and not steer weight.

At the trial plaintiff introduced its written contract and made a *prima facie* case on its complaint. Thereafter defendant in support of his counterclaim testified in substance that at the time the contract was under negotiation plaintiff's manager agreed orally to guarantee that the cattle would be fat enough for market in ninety days. At the conclusion of this testimony plaintiff moved to strike it as an attempt to modify the terms of a written contract by parol. The court denied the motion on the ground that the contract was ambiguous in its nature, and submitted the case to the jury upon that theory, leaving it to the latter to determine the true meaning of the contract.

There are some nine assignments of error, but we discuss the case from the standpoint of the legal questions necessary for its determination.

It is of course the law in this jurisdiction, established by many decisions of this court, that a written contract, plain and unambiguous on its face, may not be altered or varied by parol evidence, and that its interpretation is a matter of law for the court, and not one of fact for the jury. *Miller Cattle Co.* v.

*Mattice,* 38 Ariz. 180, 298 Pac. 640; *Carrick, etc.,* v. *Sturtevant,* 28 Ariz. 5, 234 Pac. 1080; *Valentine* v. *Shepherd,* 19 Ariz. 241, 168 Pac. 643. The vital portion of the contract in question reads as follows:

"The said party of the second part agrees to feed the same until they are fat enough to market, but not to exceed an average of ninety days; and provided further, that none of said cattle shall be fed for a longer period than ninety days."

It was urged by defendant that this means that plaintiff guaranteed that at the end of the ninety days the cattle would be fat enough to market. It was contended by plaintiff that its meaning is that if the cattle were fat enough to market before the ninety days, the feeding period should cease as soon as they were fat, but that if they were not fat enough at the end of the ninety days, plaintiff was under no further obligation in the premises, but was entitled to turn the cattle back to defendant and to be paid for feeding in accordance with the terms of the contract.

The vital issue on which the case was tried was as to which of these two conflicting theories was the correct one, and the trial court considered the contract ambiguous on this point and admitted parol evidence as to prior and contemporaneous statements alleged to have been made by the parties, and submitted the question of its true meaning to the jury, under instructions covering these two theories.

We think the provision of the contract just quoted is as clear and unambiguous a statement that plaintiff's duty was complete at the end of the ninety days, regardless of the condition of the cattle at that time, as it was possible to make it. Under such circumstances it was error to leave the construction of the contract to the jury, or to permit any evidence as to the loss by defendant on account of the cattle not being fat. Under the terms of the contract plaintiff

did not guarantee that they should be fat enough for market purposes within the ninety days or at any other date, but merely that it would feed the cattle for a period which should not exceed ninety days under any circumstances, but which might be less if the cattle were fat sooner. Plaintiff was therefore entitled to recover from defendant the difference between the net weight of the cattle when weighed in at the agreed price of ten cents per pound and their net weight when weighed out at the agreed price of twelve cents per pound, less the $5,000 which it is admitted he had paid.

The second contention of defendant that he should not be required to pay for the sixty pounds of water, which it is alleged each one of the cattle consumed while waiting to be weighed, depends upon two things. It appears from the contract that four per cent. of the gross weight of the cattle when weighed both in and out was to be allowed for shrinkage. This is the usual and customary trade method of deducting the amount of water and feed which cattle are presumed to have in them at the time they are weighed. Plaintiff received credit for this shrinkage when the cattle were weighed in, and defendant received credit for the same percentage of their gross weight when they were weighed out. It is, however, true that such shrinkage is for the purpose of covering food and water consumed under normal conditions, and not for an extraordinary amount of either consumed by cattle as the result of design or carelessness on the part of the party who receives the payment. If, therefore, through design or negligence on the part of plaintiff the cattle consumed an inordinate amount of water just before being weighed, defendant was entitled to a credit of the difference between normal four per cent. shrinkage and the excess weight caused by such inordinate consumption. If,

on the other hand, even though the cattle did consume more water than they would normally have done, such were not the fault of plaintiff, but rather that of defendant, he must bear the loss. This particular issue would, of course, be for the jury under appropriate instructions from the court, if evidence appears justifying its submission.

In view of what we have just said, it is unnecessary that we consider the specific assignments of error. At a new trial we presume the conditions which caused them will not arise again.

The judgment of the superior court of Maricopa. county is reversed and the cause remanded for a new trial in accordance with the views expressed herein.

McALISTER, C. J., and ROSS, J., concur.