[No. 12755.  Department Two.  November 29, 1915.]

GRAND UNION LAUNDRY COMPANY, *Respondent*, v.
J. E. CARNEY, *Appellant*, C. L. HEADY,
*Defendant*.[1]

DAMAGES—LIQUIDATED DAMAGES—CONTRACTS—CONSTRUCTION.   It
is the policy of the courts to hold parties to their expressed con-
tracts for "liquidated damages," rather than construe the same as
providing a penalty.

SAME—LIQUIDATED DAMAGES—ACTIONS—BURDEN OF PROOF.  Where
a contract on its face provides for "liquidated damages," the burden
is upon the defendant to prove the situation of the parties as to prof-
it or damage, if he wishes to show that only a penalty was intended.

SAME—LIQUIDATED DAMAGES OR PENALTY—CONTRACTS—CONSTRUC-
TION.  A contract for laundry work at reduced rates, guaranteeing to
furnish work to the amount of eighteen hundred dollars a year, and
providing that, in case of failure so to do, the difference between the
amount actually furnished each year and said sum of eighteen
hundred dollars, shall be the "measure of damages" accruing to the
laundryman and "is hereby agreed as liquidated damages," is a con-
tract for liquidated damages and not merely for a penalty; inas-
much as the actual damages are difficult of ascertainment, and the
damages automatically regulate themselves according to the degree
of the breach.

Cross-appeals from a judgment of the superior court for
King county, Albertson, J., entered November 11, 1914,
upon findings in favor of the plaintiff, in an action on con-
tract, tried to the court.  Affirmed.

*Preston & Thorgrimson*, for appellant.
*Walter A. Keene*, for respondent.

BAUSMAN, J.—This is an action at law tried without jury.
Appellant Carney, who previously had been a contract-
or, entered into a special partnership with defendant
Heady (who has not joined in this appeal) to operate a
Turkish bath.  Heady had for some years been a barber

[1]Reported in 153 Pac. 5.

next door, and Harry Okamura, in business as the Eagle
Laundry, had long been doing Heady's laundry work. Car-
ney had no interest in the barber shop. His sole partner-
ship with Heady was in the bath house business. After the
latter had existed two or three months, Heady informed Car-
ney that they could get from Okamura a rate of fifty-five
cents per hundred on the bath house laundry if they would
give him a three-year contract. Carney told Heady to do
what was best in the matter. Okamura's lawyer then drew
up a contract which is the subject of this law suit, and this
was afterwards signed by Carney, apparently without his
reading it. In this contract Carney and Heady, doing busi-
ness as Heady's Turkish Baths, were named as first parties,
and Okamura as the second. The contract, naming a price
of fifty-five cents per hundred on the bath house work, con-
tained the following stipulation in which we have italicized
features now pertinent:

"The said parties of the first part hereby guarantee to
the said parties of the second part sufficient laundry work
of the classes herein described to the sum of *eighteen hundred
dollars per year* for the term of this agreement, and *in case
of their failure* so to do, *the difference between the amount
actually furnished each year and the said sum* of eighteen
hundred dollars, shall be the *measure of damages* accruing to
said party of the second part and is hereby agreed to *as
liquidated damages.*"

The contract had also a provision of twenty-five cents per
hundred on Heady's separate barber shop work, which price
was later raised ten cents a hundred on oral and private
agreement between Heady and Okamura. But upon the re-
quest of Heady that he do so and say nothing to Carney
about it, the bills for this work were rendered separately
to Heady. The plaintiff, successor in interest of Okamura,
asked for judgment, not only for the liquidated damages
which we shall hereafter refer to, but for $600 unpaid bal-
ance on this last mentioned work. This was denied plaintiff

by the lower court, though it found in its favor on the principal point. The plaintiff, in consequence, has prosecuted a cross-appeal in this action.

Before considering Carney's appeal, we may at once eliminate the cross-appeal of the laundry company. That arising entirely upon questions of fact found adversely to plaintiff, the action of the lower court in reforming the contract so as to exclude Carney from liability on the barber shop laundry bill appears to us correct, and judgment is affirmed on the cross-appeal.

We resume now the appeal of Carney, against whom the lower court rendered judgment for $738.98. This constitutes the difference between the stipulated $1,800 and $1,061.02, which latter was the laundry price for the total work furnished during the final year. That Carney and Heady furnished the laundry the required work during each of the first two years is conceded, but it is also conceded that they failed to do so in the third year beyond the sum mentioned. The degree of their failure is the judgment against them, for the lower court interpreted "liquidated damages" as liquidated damages and not as a penalty. The case comes to us, then, upon that question of law. Now, neither the plaintiff nor the defendant put in any evidence to show what the status of the laundry company was in respect to either profits or loss through performance or breach of the contract by Carney and Heady in the third or any of the years, so we are invited to construe "liquidated damages" as a mere penalty on the face of the instrument itself, and the admitted sort of business involved.

It must ever be the policy of the courts to hold to their expressed bargain minds competent to contract. Every excursion from intelligible language of parties is as liable to defeat as to promote justice. Particularly true is this in contracts prescribing "liquidated damages." Indulgence there must, in the nature of things, give a certain advantage

to one side, because the party claiming that it is a fixed
amount is never, if it be construed as only a penalty, allowed
to escape his limited sum and show damages beyond it.    The
bars, thrown down to the other party, are kept up as to him.
To take the present instance, no matter what losses the laun-
dry company or Okamura may have had beyond the liquidated
sum, they are utterly lost.    Call the term a mere penalty,
and the laundry company is held to its maximum, while the
other side are set free from their minimum.    It is a doubtful
undertaking to call that not fixed which business men, in the
exchange of promises, agreed was fixed.    Nevertheless, courts
having found it unavoidable at times to relieve parties from
their own strict language pronouncing liquidated sums, it
becomes necessary to discuss this provision.

Some contracts there are for liquidated damages that upon
their face may be pronounced as imposing only a penalty.
Certainly, without further evidence, some clauses of that sort
appear so little in accord with the almost manifest intentions
of the parties that a court may construe them as penalties,
until the party claiming damage has offered evidence from
the circumstances or discussions of the contracting parties
that they meant just what they said when they said it.    How-
ever that may be, we are satisfied that this contract is not
one of these.    On the contrary, we are satisfied that this con-
tract on its face is a proper one for liquidated damages.

The burden of proof accordingly was upon the defendants
below.    Upon them devolved a showing, if any such could be
made, that would furnish the court the situation of the par-
ties as to profit or damage, so that the court, putting itself
in the position of the contracting parties at the time of the
bargain, could adjudge whether it was probable that they
meant more by this term than a penalty clause.

One argument commonly invoked to convert liquidated dam-
ages into penalty is that in the given case the damages were
quickly ascertainable.    Supposing that rule, the reason for

it does not exist in this record. Who can say that, when the laundryman made his bargain and added this work to his business, he did not have to make additional arrangements to carry out this added work? Presumably he would have to increase his force of men to fetch the linen, to count it, and to clean it. For aught that appears, he may have had to enlarge his shop and pay more rent, or he may have had to give up other work more profitable. Who shall say but that, on the falling off of work during the last year, the laundryman was in a position of uncertainty during a considerable period as to how rapidly he should diminish his force of workmen or his supplies? In fine, we do not agree with counsel for appellant in saying that his damages through the breach of this contract by Heady and Carney were a mere matter of bookkeeping to compute.

Each case in liquidated damages must be determined upon its own facts. A case not greatly dissimilar is *Yatsuyanagi v. Shimamura*, 59 Wash. 24, 109 Pac. 282, which involved a contract of equal partnership between four workmen tailors who had imposed upon themselves a forfeiture of $1,000 should any one withdraw from the partnership. Each partner was to receive wages for a day of prescribed length. They were apparently but little more than wage earners whose dropping out of the business would leave losses no harder to compute than those of Okamura here. Yet this court, declining to convert their liquidated sum into penalty, said:

"The nature of the business was such that, upon a breach of the contract, the ascertainment of damages would be difficult and uncertain, and it would require exceedingly nice discernment and clear distinction on the part of either court or jury to keep away from the realm of speculation and remoteness. . . . Neither is there anything to show that such sum is disproportionate to the actual loss, another feature much regarded by the courts in determining the question."

And it is a fallacious test, that of ease of ascertaining the damages, one never to be in itself determining against the

expressed liquidated sum, but to be thrown into the scale of interpretation when there are other doubts.

To take a class of cases in which this court held to the liquidated sum though the ascertainment of damages may appear none too speculative, we may begin with *Reichenbach v. Sage*, 13 Wash. 364, 43 Pac. 354, 52 Am. St. 51. That case involved a clause that a liquidated sum be forfeited for any delay in the completion of a dwelling house. The language which we quoted and approved in that case from *Dwinel v. Brown*, 54 Me. 470, cannot be too constantly borne in mind under the temptations which so constantly arise to ignore the stipulation of parties concerning liquidated damages:

"The parties themselves best know what their expectations are in regard to the advantages of their undertaking, and the damages attendant on its failure, and when they have mutually agreed upon the amount of such damages in good faith, and without illegality, it is as much the duty of the court to enforce that agreement as it is the other provisions of the contract. . . . No judges, however eminent, can place themselves in the place or position of the parties, when the contract was made, scan the motives and weigh the considerations which influenced them in the transaction, so as to determine what would have been best for them to do, who was least sagacious, or who drove the best bargain."

This per diem liquidated damages we have frequently enforced in building contracts, though in many cases the damages were susceptible of reasonable ascertainment through rent appraisements, and though none of the damages consequent upon delay involved the calculations of expected business profits. *Williams v. Rosenbaum*, 57 Wash. 94, 106 Pac. 493; *Dickerman v. Reeder*, 59 Wash. 405, 109 Pac. 1060; *Erickson v. Green*, 47 Wash. 613, 92 Pac. 449.

As we have already stated, we regard the damages here as difficult of ascertainment, so it is not necessary to speak further on this point. There is wanting also in this case another feature that sometimes influences courts to construe a

provision for liquidated damages into a penalty, namely, the
feature of fixing for any one of several different kinds and
degrees of breach an equal forfeiture of money. On the other
hand, there is found in this case a feature which is very favor-
able to the upholding of liquidated damages when prescribed
by the parties themselves; that is to say, that the damages
automatically regulate themselves according to the degree of
the breach itself. A limitation of this kind is found in *Eilers
Music House v. Oriental Co.*, 69 Wash. 618, 125 Pac. 1023,
where this court had under consideration a conditional sale
contract. There the vendor of a mandolin pianorchestra re-
tained title though he delivered possession, and was allowed
to keep as liquidated damages all the payments that were
made, even though he might seize the instrument and take it
back into his possession. This he actually did in that in-
stance after most substantial payments.

Appellant in the present case, conceding the authority of
that decision, distinguished it by referring to a comment of
this court to the effect that the deterioration of a delicate
and highly complicated instrument like that could hardly be
determined by evidence. This last is true, but as all second-
hand machines, such as pianos and automobiles, can have an
approximate estimate of value, and in fact have a degree of
market quotation, it would not do to place the decision of
this court upon that language. Rather would we consider it
as resting upon other language applicable here; that is to
say, that the provision for liquidated damages made a really
sliding scale. The longer the instrument was kept in use
by the vendee, the more it was consumed and the more dam-
ages the vendor should have and should retain through the
monthly payments.

In the present case, the liquidated damages diminished or
increased proportionately to the supply or the shortage of
work given, the parties themselves happily calling the clause
the measure of damages, and adding, as we think by way of

certainty to their engagement, the term "liquidated damages," with the intention that it should be a sum not subject to review.

The judgment of the lower court is affirmed.

MORRIS, C. J., MAIN, HOLCOMB, and PARKER, JJ., concur.