[Civil No. 2980. Filed April 27, 1931.]

[298 Pac. 640.]

MILLER CATTLE COMPANY, a Corporation, Appellant, v. J. W. MATTICE and W. B. MATTICE, Doing Business Under the Name and Style of J. W. MATTICE & SONS, Appellees.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Mr. Benjamin Blake and Messrs. Mathews & Bilby, for Appellees.

LOCKWOOD, J.—J. W. Mattice and W. B. Mattice, doing business under the name and style of J. W. Mattice & Sons, hereinafter called plaintiffs, brought suit against Miller Cattle Company, a corporation, hereinafter called defendant, to recover a balance of $2,945 alleged by plaintiffs to be due them from defendant under the provisions of a certain written contract for the purchase and sale of range cattle. Plaintiffs reside in Graham county, and defendant is a corporation doing business and having an agent in Maricopa county. The contract was executed in Maricopa county, but specifically provided that the cattle were to be delivered in Graham county; that $12,500 of the purchase price was to be paid before

any cattle were delivered, and the balance "when and as said cattle are delivered."

Defendant applied to the trial court to remove the case for trial to Maricopa county, alleging that it had no agent in Graham county, owned no property therein, and did not conduct any business in that county. Plaintiffs resisted the motion, and the trial court, after hearing the matter on affidavits and counter-affidavits, denied the application to remove. The case thereafter came on regularly for trial before a jury in the superior court of Graham county. The jury returned a verdict in favor of plaintiffs for the full sum prayed for, and, from the order overruling the usual motion for new trial and the judgment on the verdict, defendant has appealed.

The first question raised on this appeal is whether or not the case was tried in the proper county. It is claimed by defendant that its residence was in Maricopa county, and that it was entitled to be sued there unless the circumstances of the case brought it within the exceptions set forth in subdivisions 5 and 18 of section 3715, Revised Code of 1928. These subdivisions read as follows:

"5. Persons who have contracted in writing to perform an obligation in one county, may be sued in such county or where they reside."

＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊

"18. Actions against railroad companies, insurance companies, telegraph or telephone companies, joint stock companies and other corporations may be brought in any county in which the cause of action, or a part thereof, arose, or in the county in which the defendant has an agent or representative or owns any property or conducts any business."

Under the terms of the contract, it was the duty of the plaintiffs to deliver the cattle in question to defendant in Graham county while it was the duty of defendant to pay for them "when and as said cattle

are delivered on board cars in good condition." Does this require payment in Graham county?

Defendant urges that our statute in this particular was taken from the state of Texas, and that such state has held under similar circumstances there is no implication that the payment should be made at the place of delivery. In the case of *Burkitt & Barnes* v. *Berry,* (Tex. Civ. App.) 143 S. W. 1187, the Court of Civil Appeals of Texas said:

"If an implied promise to pay in Angelina county is shown, this would not defeat defendants' right to be sued in the county of their residence. The agreement or promise to perform in a county other than that of the promisor's residence, in order to fix the venue in such county, must be in writing, and the right of a defendant to be sued in the county of his residence can only be defeated when the plaintiff brings his case clearly within the exception contained in the statute. *Cohen* v. *Munson,* 59 Tex. 237; *Mahon* v. *Cotton,* 13 Tex. Civ. App. 239, 35 S. W. 869; *Russell & Co.* v. *Heitmann & Co.,* (Tex. Civ. App.) 86 S. W. 75."

In that case the only reference to payment for the goods sold was the language of the letter constituting the written contract: "Will accept 28 cents f. o. b. cars McNeal Switch for same," and the court held this language was used only to fix the price and not to designate the place of payment.

The rule above stated is doubtless correct under the circumstances of the case cited, but we are of the opinion the language in the contract in the case at bar is very different than that in the case just referred to, and that not only it may, but it must, be implied from the terms thereof that the payment is to be made in Graham county. The language of the Court of Civil Appeals of Texas in *Cecil* v. *Fox,* (Tex. Civ. App.) 208 S. W. 954, applies to the present situation. We quote therefrom as follows:

"Although a written contract may not plainly specify that it is to be performed in a certain place, *yet if the contract, by its terms, leads to no other conclusion but that it is performable in that place,* then jurisdiction will be given to that place.

"The case of *Brick Co.* v. *Cox & Co.,* reported in 33 Tex. Civ. App. 292, 76 S. W. 607, in principle applies to this case and we think is decisive of it, and we quote from it as follows:

" 'It will be seen that the contract does not, by express terms, upon its face provide for performance in Bell county. This, however, is not necessary in order to confer jurisdiction under the article above referred to. "It is held that the question to be determined is whether the legal effect and purport of the written instrument is that it should be performed in the county where the suit is brought." 1 Sayles' Tex. Civ. Prac., p. 256; *Henry* v. *Fay,* 2 Wills. Civ. Cas. Ct. App. §§ 834, 835. In the case of *Seley* v. *Williams,* 20 Tex. Civ. App. 405, 50 S. W. 399, it is said: "It is to be observed that exception 5 to article 1194 does not provide that the contract in writing shall, by express words, require performance of the contract in a particular county; but if the contract be in writing, and must necessarily be executed in a county different from that of the domicile of the party contracting, then, for breach of the contract, he may be sued in either of these counties." See, also, *Ry. Co.* v. *Browne,* 27 Tex. Civ. App. 437, 66 S. W. 343. We think the rule is correctly stated in the authorities cited. Applying them to the contract and the facts offered in evidence in this case, we are unable to escape the conclusion that the legal effect and purport of the contract, interpreted in the light of the circumstances surrounding the parties and attending its execution, contemplated a delivery of the oil by appellees in Bell county, Tex.' " (Italics ours.)

The venue of the case was therefore properly laid, and the court did not err in refusing to transfer it to Maricopa county.

The second and vital question before us is the construction of the written contract. The parts essen-

tial to an understanding of the precise point in question may be quoted as follows:

"Contract for Purchase and Sale of Cattle.

"This agreement, Made and entered into this 29th day of December, 1927, by and between J. W. Mattice & Sons, of Pima, Arizona, hereinafter known as the sellers, and Miller Cattle Company, a corporation organized and existing under and by virtue of the Laws of the State of Arizona, with its principal place of business at Phoenix, Arizona, hereinafter known as the Buyer:

"Witnesseth as follows: For and in consideration of the prices herein mentioned, which have been mutually agreed upon by both parties to this contract, the Sellers hereby agree to sell and deliver f. o. b. cars in good shipping condition, at Ft. Thomas or Pima, Arizona, on the Southern Pacific Railroad, the following described cattle:

"About 300 heifer yearlings, one year old or over @ $35.00 per head.

"About 400 head of yearling and two year old steers @ $40.00 per head.

"About 25 head of bulls at $40.00 per head.

"About 50 head of three year old steers at $50.00 per head.

"About 1,000 head of cows at $40.00 per head.

"About 750 head of cows and calves at $50.00 per head. . . .

"It is hereby further agreed by the parties hereto that the first two deliveries will consist of dry cows, cows and calves, bulls and three year old steers only; and the third and fourth deliveries will consist of dry cows, cows and calves, heifer yearlings, steer yearlings, two year old steers and bulls; and the fifth delivery to consist of cattle of any classes in the above mentioned irons. All cattle delivered under this contract shall be full ages at the time of delivery and in the case of cows and calves it is agreed that there will be no calves offered for delivery which are too young to ship without loss. The Sellers further agree that they will be carefully handled so that the cattle will be finally delivered f. o. b. cars in good condition. . . .

"The Buyer further agrees to pay to the Sellers as a forfeit the sum of $12,000 on or about the 20th day of March, 1928, which together with the $500.00 paid on the date of signing this contract which sum aggregates the total sum of $12,500.00 constituting total forfeit, which sum was determined on the basis of a forfeit of $5.00 per head on 2500 head of cattle as herein above set forth.

"The Buyer further agrees to pay balance of purchase money when and as said cattle are delivered on board cars in good condition, and failing to do so they shall forfeit the total of the amount advanced on this contract.

"It is agreed by the parties hereto that the Buyer will be permitted to withdraw $5.00 per head on all cattle received during the life of this contract and until the total of $12,500.00 constituting the forfeit under this contract has been absorbed as herein set forth. The forfeit hereinbefore mentioned will be confined to any remaining balance of forfeit after Sellers have begun delivery. . . .

"The Sellers hereby agree to deliver not less than 2500 head of cattle under this contract and to forfeit to the Buyer the sum of $5.00 per head for all they fall short of this number."

The particular point over which the entire controversy involved in this case arose is whether or not, in computing the "2,500 head of cattle" referred to in the last clause of the contract quoted above, calves running with their mothers are to be counted separately from the mothers, in order to determine whether the full 2,500 head have been delivered, or whether in such case the mothers and calves are together to be considered as one "head of cattle." The trial court held that the contract was ambiguous on this point, and allowed plaintiffs to offer parol evidence of various alleged conversations and agreements with defendant's representatives as showing the interpretation placed on the contract by the parties.

If the contract is plain, certain and unambiguous in its terms, such action on the part of the trial court was erroneous. *Valentine* v. *Shepherd,* 19 Ariz. 241, 168 Pac. 643; *Kreig* v. *Hammels,* 29 Ariz. 280, 240 Pac. 1031. Let us apply to the contract in question the general rules of interpretation to see whether it is ambiguous on the point in controversy.

The first rule pertinent to the question is that a particular clause in a contract cannot be interpreted as if it stood by itself, but the court must take into consideration the entire contract. *Tevis* v. *Ryan,* 13 Ariz. 120, 108 Pac. 461; *O'Brien* v. *Miller,* 168 U. S. 287, 42 L. Ed. 469, 18 Sup. Ct. Rep. 140. The second is that, where a certain word or phrase is used several times in a contract, and in one case its meaning is plain and definite, while in another place no definition is given, it will be presumed that it is used in the same sense in both places. *Lyon* v. *Gray,* (Tex. Civ. App.) 288 S. W. 545; *McMillen* v. *City of Mart,* (Tex. Civ. App.) 149 S. W. 270; *Pringle* v. *Wilson,* 156 Cal. 313, 24 L. R. A. (N. S.) 1090, 104 Pac. 316; *Chicago Home for Girls* v. *Carr,* 300 Ill. 478, 133 N. E. 344; *Schnitman* v. *Husted,* 99 Cal. App. 666, 279 Pac. 194.

On examining the first quoted provision of the contract, it is unquestionable that cows and calves are counted together to make one "head" of cattle. Any other construction would create the absurdity of causing the buyer to pay more for a sucking calf than he would for a two year old steer. The next quoted clause of the contract, it will be observed, classes the deliveries, and the punctuation of that clause clearly implies that cows and calves are counted together. It further appears that the forfeit deposited by the buyers was calculated on the basis of $5 per head for 2,500 head, and that the total number of cattle described in the first clause of the contract by classes

are only 25 over the 2,500 head, if cows and calves are to be considered together as one "head," while, if they are counted separately, the estimated delivery runs 775 over the number on which the forfeiture is based.

We are therefore of the opinion that, under the ordinary rules of construction, the contract is plain, certain, and unambiguous to the effect that calves running with their mothers are not to be counted separately in determining whether the full number have been delivered, and it was error for the court to submit that issue to the jury, for it is the rule in this jurisdiction that, when a contract is plain, certain, and unambiguous on its face, its interpretation is a matter of law for the court, and not one of fact, for the jury. *Valentine* v. *Shepherd, supra; Carrick, etc.,* v. *Sturtevant,* 28 Ariz. 5, 234 Pac. 1080.

It is urged by plaintiffs that, after the contract had been signed by both parties, there was a subsequent conversation to which it was agreed that the clause providing for a forfeiture was not to be enforced, but was merely included for the purpose of satisfying the bank which was loaning defendant money to buy the cattle. If this conversation be offered to contradict the written contract, it is, of course inadmissible. If it be offered as proving a new and later contract, there is no consideration for such contract, and it is void. *Pleasant et al.* v. *Arizona Storage & Distributing Co.,* 34 Ariz. 68, 267 Pac. 794. If it be offered for the purpose of proving the interpretation placed on the contract by the parties, such evidence is only admissible to explain an ambiguity, which, as we have stated, does not exist.

There remains but one other question which we need consider. It is urged by plaintiffs that, even though the contract be as a matter of law interpreted in accordance with the contention of defendant, the

clause providing for a forfeiture of $5 per head, for all cattle short of the 2,500 set forth in the contract, is in the nature of a penalty, and therefore will not be enforced, in the absence of a showing of actual damages. It is true that, where a penalty, strictly speaking, is provided for the breach of a contract, the party claiming damages for such breach recovers, not the full amount of the penalty, but his actual damage, as, for example, if a bond in the sum of $10,000 had been given to guarantee the performance of this contract, the buyer could have recovered only his actual damage in a suit on the bond. *Illinois Surety Co.* v. *United States,* 229 Fed. 527, 143 C. C. A. 595; *Jemison* v. *Governor,* 47 Ala. 390. It is urged, however, by defendant that the clause is not, strictly speaking, a penalty, but rather an agreement for liquidated damages.

It is, of course, true that parties, where the damages in case of a possible breach of the contract, are uncertain, may stipulate in advance for a certain sum as liquidated damages, and provisions to this effect are generally enforced. 17 C. J. 931. It is also true that the mere use of the words "forfeit" or "penalty" is not necessarily determinative of the real legal effect of such provisions. They are construed according to the circumstances of the case, and in the light of all the facts surrounding it. *Weatherford* v. *Adams,* 31 Ariz. 187, 251 Pac. 453. One of the principal rules used in determining whether a contract fixes a penalty or liquidated damages is whether the payment mentioned in the contract is a fixed and definite sum, regardless of the nature or extent of the breach of the contract, or whether it is based upon, and varies with, the nature and extent of the breach. *Grand Union Laundry Co.* v. *Carney,* 88 Wash. 327, 153 Pac. 5; *Go Fun* v. *Fidalgo Island Canning Co.,* 37 Wash. 238, 79 Pac. 797; *Detroit Edison Co.* v.

*Wyatt Coal Co.*, (C. C. A.) 1 Fed. (2d) 788; 17 C. J. 947. Tested by this rule, we are of the opinion that the clause can be considered only in the light of liquidated damages.

In view of what we have said previously, it is not necessary that we consider the other assignments of error made by defendant. It is agreed between the parties hereto that, if sucking calves and cows are to be counted together as one "head" of cattle under the contract, plaintiffs were short in their delivery 416 head of cattle, which at the rate of $5 per head would amount to $2,080. It is also admitted that the amount still due from defendant to plaintiffs for the number of cattle actually delivered at the contract prices is $2,945. Since from that sum defendant was entitled to deduct the $2,080 due it as liquidated damages, there is still due from defendant to plaintiffs the sum of $865 under the contract. This amount defendant tendered to plaintiffs before the bringing of this suit and by its pleadings. A retrial of the case would be a waste of time.

It is therefore ordered that the judgment of the superior court of Graham county be reversed, and the case remanded, with instructions to enter judgment in favor of plaintiffs in the sum of $865, defendant to recover its costs in both courts.

McALISTER, C. J., and ROSS, J., concur.