381 P.2d 577

**Jack D. SCHULZE, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona and Arizona Silica Sand Company, Respondents.**

**No. 7584.**

Supreme Court of Arizona.

In Division.

May 15, 1963.

Alan Philip Bayham, Phoenix, for petitioner.

Donald J. Morgan, Phoenix, for respondent The Industrial Commission, Edward E. Davis, C. E. Singer, Jr., Lorin G. Shelley and Ben P. Marshall, Phoenix, of counsel.

YALE McFATE, Superior Court Judge.

This is a certiorari proceeding brought by Jack D. Schulze, claimant for benefits under the Arizona Workmen's Compensation Act, against the Arizona Industrial Commission (herein called "Commission"), and Arizona Silica Sand Company, in whose employ petitioner claims to have been injured. That part of the factual background about which there is no controversy is as follows:

On May 17, 1953, while petitioner was in the employ of Sanoline Oil and Gas Co. in Albuquerque, New Mexico (herein called Sanoline), he fell backwards in a swivel chair and injured his lower back. He did not respond satisfactorily to treatment and on May 17, 1958, he underwent an operation at the Veteran's Hospital in Albuquerque, for a spinal fusion. After wearing a body cast for six months followed by a body brace, he was discharged by his physician on April 1, 1959. After that he worked at his profession as a geologist and at related jobs off and on for varying periods of time until his employment on April 23, 1960, with Arizona Silica Sand Company, as manager of their plant south of Winslow, Arizona.

Claimant bases his claim on the alleged fact that on November 28, 1960, while inspecting some welding in the course of his employment, he slipped on some sand on a grizzley, fell backwards striking his lower back on the rails; that he felt sharp pain for several hours which finally subsided somewhat but he has suffered disabling pain since then and has been unable to follow his regular line of work.

At the time of this alleged accident petitioner had instituted and there was pending in New Mexico, an action against Sanoline as a result of the chair fall, and shortly prior to the alleged accident of November 28, 1960, he had arranged to submit to a physical examination by a Dr. Sidney Schultz (note difference in spelling—no relation to claimant) in Albuquerque, on behalf of Sanoline. The examination was conducted on November 30th at the appointed time. From his examination Dr. Schultz found that the patient's spinal fusion was not solid and that there was motion between the vertebrae involved, which was likely the cause of all his complaints.

During the course of these proceedings before the Commission, petitioner was ex-

amined by Drs. Juan E. Fonseca, Warren D. Eddy, Jr. and Stanley S. Tanz. They filed a joint report, concluding that his symptoms were due in part to the previous back disease and failure of fusion following the surgery of 1958, and that the injury of November 28, 1960, aggravated that disability. They estimated a 5% general functional disability as a result of the latter accident, "if the history is dependable."

On June 27, 1961, petitioner went to see Dr. Wendell C. Peterson in New Mexico for further advice and treatment and called him as a witness in his behalf. Dr. Peterson concluded that the accident of November 28, 1960 resulted in "a superimposed injury on an existing area of injury and surgery, with the probability of disc injury in the third lumbar interspace which is one space above the one previously injured." This opinion was, in his words, "based on the patient's statement that he was free of pain up to the time of the accident and able to carry on work and from that time on he was required to seek medical attention and was unable to carry on his usual activities. It is an entirely subjective observation."

The Commission, at the conclusion of extended hearings, made its findings that Schulze (1) *"did not sustain an accidental injury* as claimed causing his disabilities" and that (2) "all of his disabilities, if any, are the result of prior injuries or disabilities sustained before his employment with defendant employer."

 These findings, petitioner claims, are erroneous. He relies on the well established proposition of law that where there is no substantial evidence to support the findings and award the Supreme Court will set the award aside.

The probative value of the medical opinions in this case which relate the petitioner's symptoms to the accident of November 28, 1960, depend entirely on the validity of the medical history upon which those opinions were based. If that history is true, then Schulze did sustain a disabling accidental injury, and the unanimous medical opinion would require a finding that such injury caused at least a part of his disability. In these circumstances the award should be set aside. On the other hand, if the history is false, or if the evidence is conflicting to the extent that reasonable men might differ as to its probative effect, this Court should sustain the Commission. The precise question is, whether there was evidence from which reasonable men might conclude (as the Commission apparently did) that Schulze (1) did *not* slip and fall and sustain a back injury on November 28, 1960, or (2) that he was in no worse condition *after* the alleged accident than he was *before*.

Petitioner filed an affidavit with the Commission in which he stated:

**38**

"* * * two days following injury I went to Dr. Sidney Schultz who took x-rays and diagnosed my injury. He advised me I should be treated in Arizona since this was an industrial injury."

Dr. Schultz, by letter of April 4, 1961, informed the Commission that on the occasion of the examination, November 30, 1960, petitioner did not mention to him that two days prior thereto he had sustained a back injury, and he did not inform petitioner he should be treated by an Arizona physician.

A. Mr. Fallon, who became the employer's manager on January 1, 1961, stated petitioner did not mention an alleged accident to him and that Schulze left on January 7th, saying he had business in Phoenix and Tucson and that he would be back on January 10th. He did not return to work, but was hospitalized in Tucson by Dr. Tanz on January 10th. His claim for compensation was dated December 28, 1960, and filed January 26, 1961.

In his claim for compensation, petitioner named as witnesses, Elmer J. Gilstrap and John W. Pennington. Gilstrap testified Schulze approached him with an affidavit for his signature which stated among other things that Gilstrap "saw him get hurt." He stated he refused to sign the affidavit because it was false in that he did not see the alleged accident.

When petitioner was examined by Dr. Schultz in connection with his claim against Sanoline (two days after the accident), he told Dr. Schultz that in his work as plant manager for respondent employer, no heavy work was required of him; that he was unable to climb steps or go up a hill because he was unable to take a long step without pain in the low back region. He complained of constant aching in both lower extremities, and he stated that he gets an occasional catch in the low back region which causes severe pain and he is unable to straighten up at such a time. When he has this catch he has pain which radiates down both lower extremities into the calves of both legs. He said he could do some lifting, about fifty pounds or so, but after such activity his back cramps for several weeks and causes him considerable difficulty. He stated that originally the pain was in only one leg, but since the spinal fusion the pain has been in both legs; certain positions while sleeping cause him pain in his low back; prolonged sitting or driving aggravates his back pain and he has difficulty, and he has to get out of the car and move around; he is better than he was before the fusion but does not feel that he could return to regular work as a geologist.

Compare the foregoing with his testimony before the Commission on June 23, 1961:

"Q. [From] April the first of 1959 and until December the 28th of 1960— * * * will you describe your physical condition?

"A. I was in excellent condition, I was told I could do any type of work I wished, which I did, I operated heavy equipment, I drove bulldozers, trucks, tractors, jeeps. I did full field geology work. I climbed mountains, I hiked over difficult terrain, I surveyed very rugged terrain and mountains.

"Q. And in your surveying do you carry any heavy equipment?

"A. Yes, a 35 pound transit on my shoulder. I even did heavy lifting. I was setting up and operating and working a magnesium mill.

* * * * * *

"Q. When you had occasion to do this work, this type of work, I mean this mining work, did you discern any back trouble or leg trouble doing this mining work?

"A. Not in the least.

"Q. Now, about what weights would you have been lifting? I am talking about doing this milling work. I presume that is where you would be lifting weights?

"A. Oh, weight of 75 and 100 pounds, or even more was not uncommon."

The latter testimony is compatible with the medical history given by petitioner to the doctors who rendered their opinions as to cause of his disability following the alleged accident of November 28, 1960.

In the report of Drs. Fonseca, Eddy and Tanz it is stated:

"Following the spine fusion of 1958, he was in a cast and a brace for almost a year, and after that he was *asymptomatic* until his injury of November 28, 1960. The patient had done light work until about April, 1960, at which time he became manager of a sand plant job which involved such heavy work as a little welding, a little prospecting, book work and so on." (Emphasis added) From testimony of Dr. Peterson:

"The basis of my belief on this is that the patient by his statement was free of pain up to this time [November 28, 1960] and able to carry on work. From this time on he was required to seek medical attention and was unable to carry on his usual activities."

The witness Gilstrap testified that petitioner had had back trouble and discussed his sore back many times while in the employ of respondent employer prior to November 28, 1960 and that he had no extra or special complaints after that date.

The petitioner's prior inconsistent actions and words are not merely impeachment, but are admissions against interest which constitute substantive evidence in the case to be considered and weighed as other evidence. Porter v. Porter, 67 Ariz. 273, 195 P.2d 132; Miller Cattle Co. v. Francis, 38 Ariz. 197, 298 P. 631.

Petitioner relies heavily on an affidavit of the witness Pennington which states he witnessed the alleged accident of November 28, 1960, and that petitioner suffered pain therefrom and had to be assisted. He contends the Commission cannot ignore the unimpeached statement of an alleged eye witness to the accident.

It is not for us to weigh the conflicting evidence to determine where the truth lies. That task devolved by law on the members of the Commission. If they chose to disbelieve the evidence which supported his claim, and to believe the evidence which tended to prove he did not sustain the alleged disabling accident, that was their prerogative. On the record before us we cannot say their findings are arbitrary or unreasonable.

Under the circumstances, the award will be affirmed.

BERNSTEIN, C. J., and JENNINGS, J., concur.