405 P.2d 880

**Earl BAUM, Petitioner,**
v.
**The INDUSTRIAL COMMISSION of
Arizona, Respondent.**
**No. 8563.**

Supreme Court of Arizona,
En Banc.
Sept. 29, 1965.

Lester Engler, Phoenix, for petitioner.

Dee-Dee Samet, Phoenix, for respondent; Richard J. Daniels, Robert A. Slonaker, Courtney L. Varner, Merton E. Marks, Phoenix, Glen D. Webster, of counsel.

McFARLAND, Justice:

This is a writ of certiorari to review an award of The Industrial Commission of Arizona, hereinafter called the Commission, which awarded claimant, Earl Baum, hereinafter called applicant, temporary disability accident benefits up to September 25, 1963, for a personal injury received on August 16, 1962.

Petitioner, on August 16, 1962, sustained an injury to his lower back while in the course of and arising out of his employment as a mechanic for the A. J. Bayless Markets. The record indicates that applicant strained his back while grabbing for the rear-end assembly of a truck which had slipped off a bench upon which it was resting. Applicant continued to work until August 21,

1962, at which time back pains caused him to visit the office of Dr. D. M. Ross, who diagnosed the applicant's condition as an "acute low back strain." As a result of this injury, applicant was hospitalized from October 23, 1962, until November 7, 1962. During his hospitalization, applicant underwent extensive examinations conducted by several different physicians, and, in addition, he was X-rayed several times. Upon being discharged, applicant was attended by an osteopathic specialist, Dr. Daniel Fridena, Jr., for follow-up care. On October 6, 1963, applicant was examined by Dr. Hal Pittman, who recommended that a group consultation be held before surgery was undertaken as an operation might be indicated from an orthopedic standpoint. The consultation was held on February 26, 1963, and it was the decision of this group that applicant did not have an operative condition. It was the recommendation of the group that applicant attend the industrial service program at Gompers Clinic, and that he undergo general muscle-building and gait-training exercises. The group consultation report also indicated:

"The condition is not stationary and he is not yet able to return to his regular work."

Applicant attended the clinic, underwent the exercises, and various reports were made on his progress. The report of April 29, 1963, states:

"Mr. Baum shows very little change. He has been here six weeks now and he is given a 'pep talk' this morning and if he shows no further improvement he will be terminated in the next two weeks.

"He is to return in two weeks and he is told today to really 'push it' to stretch his back out and work hard, that he will be released to work in two weeks."

On May 17, 1963, applicant underwent another consultation conducted by three physicians. The examination was conducted, and a report submitted to the Commission, the last paragraph of which reads:

"COMMENTS: This patient's subjective complaints and performance are quite out of proportion to any abnormal objective finding and the patient has quite apparently made no progress whatsoever towards rehabilitating himself. The consultants do not find evidence of neurological involvement which would indicate the necessity for surgery or other treatment on this basis. The patient has received treatment from various sources and is apparently satisfied with none. It is felt, therefore, that it would be advisable to have this man evaluated by the Medical Advisory Board."

On August 5, 1963, applicant underwent examination by the Medical Advisory Board of The Industrial Commission of Arizona,

which was composed of six physicians. The board's report stated:

"It is the opinion of the examiners that this patient does not require any further examinations or treatments, as far as his back is concerned, and there is no permanent impairment as a result of the injury of August 16, 1962. "Prior to the closure of the case, it is recommended that the patient be seen by a psychiatrist for investigative purposes only, to determine whether emotional factors play a part in his alleged inability to return to work."

Applicant underwent psychiatric evaluation by Dr. Otto L. Bendheim, in September of 1963, who concluded:

"No psychiatric disease is found. Psychiatric clearance is given."

On October 1, 1963, the Commission found, based upon the group consultations, the Gompers Clinic reports, the psychiatrist's evaluation, and the report of the Medical Advisory Board, that applicant was entitled to temporary disability accident benefits. Applicable portions of the statement of findings and award are as follows:

"1. That the above-named applicant on August 16, 1963, [sic] sustained a personal injury by accident arising out of and in the course of his employment.

\* . \* \* \* \* \*

"3. That said personal injury entitled said applicant to accident benefits (medical) until September 25, 1963.

\* \* \* \* \* \*

"6. That said applicant is entitled to compensation for total temporary disability from August 21, 1962, through September 23, 1962, and from October 23, 1962, through September 25, 1963, in the sum of $4,020.57, and compensation for partial temporary compensation from September 24, 1962 through October 22, 1962, in the sum of $65.22, or a total sum of $4,085.79.

"7. That the medical evidence reflects that said applicant has no physical disability resulting from said accident, and the Commission so finds."

Applicant timely filed an application for a rehearing. A rehearing was held during which hearing testimony was taken and, on September 30, 1964, the award of October 1, 1963, was affirmed. From this award, an application for the writ was filed with and granted by the court.

Applicant contends that the findings and award of October 1, 1963, is in error for the reason that the testimony at the rehearing demonstrated that applicant's condition was not stationary, and that he was, and has been, since the day of the accident,

unable to perform the services required of him by his former employment. Applicant claims that the medical evidence before the Commission showed that applicant still had a disability; that there was no evidence before the Commission that applicant was able to return to his former employment; that the objective findings of the doctors who testified did not support the subjective complaints of the applicant; that applicant had met his burden of establishing that he had a disability attributable to his injury of October 16, 1962; and, finally, the Commission's affirmance of September 30, 1964, was contrary to law, as there were no findings to justify the October 1, 1963, award.

The issue before this court is whether or not the findings of the Commission are sustained by the evidence. This court has upon many occasions held, in deciding this question, that if the Commission's findings are reasonably supported by the evidence, then the findings must be sustained. Where there is a conflict of evidence, as in the instant case, the court will not weigh the evidence, but only determine whether there is sufficient evidence to give reasonable support to the finding of the Commission. Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561; Magma Copper Co. v. Industrial Commission, 96 Ariz. 341, 395 P.2d 616; Phelps Dodge, Morenci Branch, v. Industrial Commission, 90 Ariz. 248, 367 P.2d 270; Graver Tank & Mfg. Co. v. Industrial Commission, 96 Ariz. 356, 395 P.2d 712; Graver Tank & Mfg. Co. v. Industrial Commission, 96 Ariz. 34, 391 P.2d 589; Schulze v. Industrial Commission, 94 Ariz. 35, 381 P.2d 577.

The record before this court discloses that there was evidence that applicant had no permanent physical disability resulting from his accident of 1962. There were the several progress reports from Gompers Clinic, the two group consultation reports, and the report of the Medical Advisory Board. In addition, there were 63 pages of testimony taken at the rehearing. Upon examination by the Commission counsel of Dr. Derfelt, applicant's family physician, the following testimony was recorded at the rehearing:

"THE REFEREE: I may suggest, Mr. Johnson, that your question was a little vague. Are you referring to Dr. Derfelt's disagreement with the consultants on the medical advisory board?

"MR. JOHNSON: Right, yes, sir.

"THE WITNESS: No, I'm not one way or the other, they have their opinion, I have mine."

The record of the rehearing, wherein Dr. Daniel T. Fridena, Jr., was questioned by the Commission counsel, reveals the following:

"Q Would you care to comment upon the findings of that board?

"A I can comment to this extent, the patient did have considerable pain subjectively. It was my opinion from the very beginning, and my record so indicates, that I did not feel that a surgical procedure would benefit the patient, and so I would have to agree with the consultants from the standpoint they said that 'Necessity for surgery is not indicated,' and I would have to agree to that extent.

"Q That board suggested that the patient's subjective complaints and performance were quite out of proportion to any abnormal objective finding; would there be any disagreement with that, Doctor?

"A My only comment is that in examining the patient we had few objective definite findings and many subjective complaints from the beginning of our care to the last time that he was evaluated by me.

The record shows Dr. Fridena's response to applicant's counsel:

"BY MR. ENGLER:

"Q Dr. Fridena, there were references to several reports by Mr. von Blum, which reports were made in group consultation and the like, and then you commented that there were few objective but many objective symptoms and complaints. [sic] Do not all of these reports show that there were some objective signs and symptoms of an injury?

"A There are some objective findings in the reports, mine as well as the ones that I have read, to the best of my memory, yes.

"Q In other words, there was some injury?

"A Well, it was my opinion that the patient had an injury, I have never so stated otherwise."

Dr. Charles Lofdahl stated, upon examination by Commission counsel, in regard to the Medical Advisory Board report, of which Board Dr. Lofdahl was a member:

"A No, we didn't think there was any treatment indicated. In other words, we were under the impression that he could go on about his business, said he does not require any further examinations or treatments as far as his back was concerned."

■ The record shows testimony of Dr. Lofdahl upon examination by appellant's counsel as follows:

"Q Did you reach a conclusion as to whether or not this man had anything wrong with his back or not?

"A Well, whether or not he actually has something wrong with his back I can't always say, I just have to go by what his general picture is. He may have some problems, but not of great enough magnitude to require any further treatment you see. In other words, here is a fellow who has had treatment for some time and he has run the gamut of physical therapy and so forth, and now he is probably reaching the time in order to really get going he has to push himself a little bit, see?

"Q Yes, I do see, but I would still like to find out, Doctor, if in your opinion at the time of your examination there was or was not anything at all wrong with Mr. Baum's back in the area which we are discussing.

"A When I examined him I was of the impression that just if only from a therapeutic point of view he would be better off if he was off on his own now, making his own way rather than going to a doctor's office.

"Q Correct, Doctor, but that isn't my question. I want to know was there anything wrong with Mr. Baum at time of your examination of him?

"A Nothing that we can find objectively.

\*　　\*　　\*　　\*　　\*　　\*

"Q And I want to know what your opinion is, did he or did he not have anything wrong with his back at the time you examined him? That calls for a 'yes' or 'no' answer.

"A No.

"Q Well, can you say 'yes' or 'no' with a qualification?

"A Yes.

"Q All right.

"A I would say yes, he could have had something wrong with his back, but as far as we were concerned and from what we could do in the treatment of backs, we didn't think there was anything that we could help him with."

Dr. Lofdahl was re-examined by Commission counsel:

"Q In all your findings and examinations, taking into consideration his complaints, it was still your opinion that there was no permanent impairment, is that correct?

"A   Right."

And while there was conflict of evidence in the medical testimony, there was evidence which reasonably supported the findings of the Commission. As stated in Graver Tank & Mfg. Co. v. Industrial Commission, 96 Ariz. 356, 395 P.2d 712:

"As we have said many times, when there is a conflict in expert medical testimony we will not substitute our opinion for that of the Commission where the Commission has reasonably resolved such a conflict." 96 Ariz. at 360, 395 P.2d at 716

We therefore hold that the findings of the Commission were reasonably supported by the evidence and must be sustained.

Award affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and UDALL, JJ., concur.